[No. S155129. Aug. 3, 2009.]

JONATHAN DELGADO, Plaintiff and Appellant, v.
INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF
SOUTHERN CALIFORNIA, Defendant and Respondent.

## Counsel

Glaser & Damone, Glaser, Damone & Schroeder and Robert P. Damone for Plaintiff and Appellant.

Dickstein Shapiro, Kirk A. Pasich, Cassandra S. Franklin and Stephanie A. Sullins for United Policyholders as Amicus Curiae on behalf of Plaintiff and Appellant.

Steven W. Murray as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Office of Daniel U. Smith, Daniel U. Smith; Law Office of Gary L. Simms and Gary L. Simms for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Reed Smith, Margaret Grignon, Judith E. Posner; Ford, Walker, Haggerty & Behar, Timothy L. Walker, Donna Rogers Kirby, Maxine J. Lebowitz and K. Michele Williams for Defendant and Respondent.

Sonnenschein Nath & Rosenthal, Paul E. B. Glad, Michael A. Barnes and David R. Simonton for Association of California Insurance Companies as Amicus Curiae on behalf of Defendant and Respondent.

Summers & Shives, Robert V. Closson and Ian G. Williamson for Employers Mutual Casualty Company as Amicus Curiae on behalf of Defendant and Respondent.

## Opinion

**KENNARD, J.**—This case involves an insurance policy that covers injury resulting from "an accident." After an assault and battery by the insured, the injured party sued the insured, alleging that the insured had acted under the unreasonable belief of having to defend himself, an act that according to the injured party fell within the policy's coverage of "an accident." Does the insurance company have a duty to defend that action? The answer is "no." We therefore reverse the judgment of the Court of Appeal, which had reversed the trial court.

## I

Interinsurance Exchange of the Automobile Club of Southern California (ACSC) issued to Craig Reid a homeowners insurance policy providing liability coverage for up to $100,000. On November 7, 2003, while the policy was in effect, insured Reid hit and kicked 17-year-old Jonathan Delgado.

In March 2004, Delgado sued Reid. The complaint alleged two causes of action. The first alleged an intentional tort in that Reid "in an unprovoked fashion and without any justification physically struck, battered and kicked" Delgado. The second cause of action alleged that Reid "negligently and unreasonably believed" he was engaging in self-defense "and unreasonably acted in self defense when [Reid] negligently and unreasonably physically and violently struck and kicked minor Jonathan Delgado repeatedly causing serious and permanent injuries."

Reid tendered to ACSC the defense of Delgado's lawsuit. ACSC denied coverage and refused to provide Reid a defense. ACSC asserted that the assault was not covered because it was not an "occurrence," which was defined in the policy as an "accident," and that the complaint's allegations arose out of Reid's intentional acts, which came within the policy's intentional acts exclusion.

In January 2005, the trial court, at Delgado's request, dismissed the intentional tort claim. Delgado and Reid then settled the action by stipulating that Reid's use of force occurred because he negligently believed he was acting in self-defense, and by stipulating to entry of a $150,000 judgment against Reid. Later, Reid agreed to pay Delgado $25,000 and he assigned to Delgado Reid's claims against his insurer, ACSC; Delgado in turn agreed to give Reid a partial satisfaction of judgment and a covenant not to execute on the remainder of the judgment.

Delgado then brought this action against ACSC. The trial court sustained ACSC's demurrer on the ground that no facts were pled to establish coverage under the policy, but the court allowed Delgado leave to amend the complaint. Delgado then filed a first amended complaint alleging, on information and belief, that at the time of the incident the insured, Reid, acted "without intent to injure" Delgado "but with intent to defend himself and his family . . . from what [Reid] perceived was an imminent threat of harm . . . ." It further alleged that Reid's "reaction to what he perceived was an imminent

threat of harm was an overreaction, [was] not willful or malicious, and was an accident . . . within the meaning of Reid's insurance policy."

The first amended complaint alleged two causes of action seeking declarations from the trial court that ACSC had a duty to defend and indemnify its insured, Reid, in the underlying lawsuit brought by Delgado; one cause of action brought under Insurance Code section 11580, subdivision (b)(2), in which Delgado sought to recover from ACSC as a judgment creditor of ACSC's insured, Reid; and three causes of action alleging bad faith—one for failure to defend, one for refusal to indemnify, and one for failure to pay medical benefits.

ACSC demurred to the first amended complaint. At the hearing on the demurrer, the trial court asked Delgado's counsel what facts were alleged regarding the events that led insured Reid to think he was acting in self-defense. Counsel responded: "We can't allege facts leading up to what happened when my client was ultimately struck. We can't allege those facts."

The trial court sustained ACSC's demurrer without leave to amend, finding that the settlement and stipulated judgment between Reid and Delgado were "contrived" to expose ACSC to liability, that it was "disingenuous at best" to characterize insured Reid's assault and battery as an "accident," and that there were no facts alleged to support Delgado's claim that Reid believed he was acting in self-defense.

The Court of Appeal reversed. After stating that allegations of harmful acts done with an unreasonable belief in self-defense describe conduct that is "properly characterized as *nonintentional* tortious conduct," the Court of Appeal concluded that Delgado's first amended complaint alleged acts by insured Reid that potentially were an "accident" covered by the policy.

We granted ACSC's petition for review.

## II

As mentioned earlier, in this case the trial court sustained ACSC's demurrer to Delgado's complaint without leave to amend. In reviewing the ensuing judgment of dismissal, "we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or

conclusions of law." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 [62 Cal.Rptr.3d 614, 161 P.3d 1168].)

■ At issue here is whether the insurer had a duty to defend its insured in an action brought by a third party.[1] To prevail in an action seeking declaratory relief on the question of the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" (*Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th at p. 300.) The duty to defend exists if the insurer "becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 [44 Cal.Rptr.2d 370, 900 P.2d 619].) We look first to the terms of the policy. (*Ibid.*)

■ ACSC's policy provides liability coverage for bodily injury caused by an "occurrence," which the policy defines as "an accident . . . which, during the policy period, results in bodily injury . . . ." In the context of liability insurance, an accident is " 'an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause.' " (*Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 563–564 [334 P.2d 881] (*Geddes*); accord, *Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 559 [91 Cal.Rptr. 153, 476 P.2d 825].) "This common law construction of the term 'accident' becomes part of the policy and precludes any assertion that the term is ambiguous." (*Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 810 [26 Cal.Rptr.2d 391]; see *Bartlome v. State Farm Fire & Casualty Co.* (1989) 208 Cal.App.3d 1235, 1239 [256 Cal.Rptr. 719].)

Here, injured party Delgado contends that because insured Reid's assault and battery was motivated by an unreasonable belief in the need for self-defense, the act fell within the policy's definition of "an accident," because from *the perspective of the injured party* the assault was "unex-

---

[1] Because the duty to defend is broader than the duty to indemnify (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299 [24 Cal.Rptr.2d 467, 861 P.2d 1153]), a conclusion that here ACSC did not have a duty to defend will be dispositive of plaintiff Delgado's claim that ACSC had a duty to indemnify. That conclusion is also dispositive of Delgado's claim that he is a judgment creditor under Insurance Code section 11580, subdivision (b)(2). Under that statute, an action by a judgment creditor of an insured against an insurance company is "on the policy and subject to its terms and limitations . . . ."

pected, unforeseen, and undesigned." We disagree that whether there was an "accident" within the policy language must be determined from the injured party's perspective.

In support of his contention, Delgado points to certain language by this court in *Geddes, supra,* 51 Cal.2d at page 563. This court there stated: "No all-inclusive definition of the word 'accident' can be given. It has been defined 'as "a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured." ' " *Geddes* went on to state that the term "accident" " ' "includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event*." ' " (*Ibid.*) It is this italicized sentence on which Delgado relies. But that language should be read in context, not in isolation, as Delgado does. *Geddes* quoted several sources that had defined "accident." The italicized sentence on which Delgado relies is only one of those definitions. Immediately after the sentence in question, *Geddes* quoted this definition of "accident": " 'Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause.' " (*Id.* at pp. 563–564.) Notably, this quoted definition lacks any mention of the need to consider the perspective of the injured party. And it was this definition of "accident" that this court in *Geddes* applied to the case before it. As *Geddes* pointed out, it is the "unexpected, undesigned, and unforeseen" nature of the injury-causing event that determines whether there is an "accident" within the policy's coverage. (*Id.* at p. 564.)

Similarly misplaced is Delgado's reliance on this court's later decision in *Hogan v. Midland National Ins. Co., supra,* 3 Cal.3d 553. *Hogan* held that to the extent the property damage that the injured party incurred there was the result of the injured party's deliberate acts, "no *accident* occurred within the *Geddes* . . . definition." (*Id.* at p. 560.) *Hogan* did not hold that whether an event is an "accident" is, as Delgado would have us conclude, to be determined from the perspective of the injured party independent of the insured's intention. Indeed, *Hogan* concluded that a deliberate act causing an injury is not an accident. (*Ibid.*)

Delgado's contention does find support in some language from *Maxon v. Security Ins. Co.* (1963) 214 Cal.App.2d 603 [29 Cal.Rptr. 586] (*Maxon*). The Court of Appeal there held that an insurance company was *not* obligated to defend its insured against a claim of malicious prosecution by a third party. (*Id.* at p. 617.) Although unnecessary to its decision, *Maxon* nevertheless

discussed whether malicious prosecution was an "accident" within the coverage of the insurance policy there in issue. In the course of that discussion, *Maxon* quoted the same language from this court's decision in *Geddes, supra*, 51 Cal.2d at page 563, on which Delgado relies: " ' "[Accident] includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event*." ' " Based on that language from *Geddes, Maxon* stated that the third party's claim against the insured for malicious prosecution was based on an accident, reasoning that the arrest and prosecution of a person who is innocent and has no reason to expect an arrest "is, as to such person, an accident." (*Maxon, supra*, at p. 612.) *Maxon*'s reliance on the *Geddes* language was wrong. As we explained earlier, that language played no role in the holding that *Geddes* ultimately reached: that the injury there was caused by an accident because it was "unexpected, undesigned, and unforeseen" (*Geddes, supra*, 51 Cal.2d at p. 564), and not because the injury was unexpected by the injured party.

Were we to accept Delgado's argument that any interpretation of the policy term "accident" should be based solely on whether the injury-causing event was expected, foreseen, or designed by the injured party, then intentional acts that by no stretch could be considered accidental nevertheless would fall within the policy's coverage of an "accident." Under Delgado's reasoning, even child molestation could be considered an "accident" within the policy's coverage, because presumably the child neither expected nor intended the molestation to occur. (See *J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1028, fn. 17 [278 Cal.Rptr. 64, 804 P.2d 689] ["[T]he very notion of 'accidental' child molestation is implausible."].) Other examples that come to mind are arson, robbery, and premeditated murder, which are acts that do not fit the common understanding of the word "accident" because they involve acts intentionally done with the intent to cause harm.

Delgado contends that ACSC could have included in the policy's coverage of an "accident" the phrase "from the standpoint of the insured," if the insurer's intent was to have the word "accident" defined from the perspective of the insured as opposed to that of the injured party. In support, he points out that earlier standard comprehensive general liability policies defined the word "occurrence" as " 'an *accident* . . . which results in bodily injury or property damage *neither expected nor intended* from the standpoint of the insured.' " (2 Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2008) ¶ 7:42.1, p. 7A-13 (rev. # 1, 2008).)

We are not persuaded that because the coverage clause of ACSC's policy does not use the words "neither expected nor intended from the standpoint of

the insured," the word "accident" as used in the policy means that whether an event is an accident must be determined from the injured party's viewpoint. The phrase "neither expected nor intended from the standpoint of the insured" in earlier comprehensive general liability policies has been construed as modifying the policy term "injury and damages," not "accident." (See *City of South El Monte v. Southern Cal. Joint Powers Ins. Authority* (1995) 38 Cal.App.4th 1629, 1646 [45 Cal.Rptr.2d 729]; *United Pacific Ins. Co. v. McGuire Co.* (1991) 229 Cal.App.3d 1560, 1566 [281 Cal.Rptr. 375]; *Commercial Union Ins. Co. v. Superior Court* (1987) 196 Cal.App.3d 1205, 1209 [242 Cal.Rptr. 454].) We note that in 1985 that phrase was deleted from the standard comprehensive general liability policy coverage clauses because of conflicting judicial interpretations of the phrase. Some courts had conflated the concept of "an accident" with the phrase "neither expected nor intended from the standpoint of the insured." This led those courts to "conclud[e] that an 'accident' refers to an unexpected or unintended injury." (3 New Appleman Insurance Law Practice Guide (2008) ¶ 30.07[4], p. 30-48.) Other courts, however, "concluding that the terms are different and have their own meanings, held that the 'occurrence' definition is limited to events that are accidental in nature, and the rest of the definition merely confirms that expected or intended injuries are not 'accidental.' " (*Ibid.*)

Under California law, the word "accident" in the coverage clause of a liability policy refers to the conduct of the insured for which liability is sought to be imposed on the insured. (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 596 [79 Cal.Rptr.2d 134]; *Collin v. American Empire Ins. Co., supra*, 21 Cal.App.4th at p. 804.) This view is consistent with the purpose of liability insurance. Generally, liability insurance is a contract between the insured and the insurance company to provide the insured, in return for the payment of premiums, protection against liability for risks that are within the scope of the policy's coverage. Insurance policies are read in light of the parties' reasonable expectations and, when ambiguous, are interpreted to protect the reasonable expectations of the insured. (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1018, 1026 [90 Cal.Rptr.3d 1, 201 P.3d 1147].) Therefore, the appropriate inquiry here is not, as Delgado would have it, confined to viewing the pertinent event from the perspective of the injured party.

Delgado insists that an insured's unreasonable, subjective belief in the need for self-defense converts into "an accident" an act that is purposeful and intended to inflict injury. We disagree.

We begin by noting that an injury-producing event is not an "accident" within the policy's coverage language when all of the acts, the manner

in which they were done, and the objective accomplished occurred as intended by the actor. (*Hogan v. Midland National Ins. Co., supra*, 3 Cal.3d at p. 560; *Stellar v. State Farm General Ins. Co.* (2007) 157 Cal.App.4th 1498, 1505 [69 Cal.Rptr.3d 350]; *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50 [261 Cal.Rptr. 273].) Here, insured Reid's assault and battery on Delgado were acts done with the intent to cause injury; there is no allegation in the complaint that the acts themselves were merely shielding or the result of a reflex action. Therefore, the injuries were not as a matter of law accidental, and consequently there is no potential for coverage under the policy. (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 655 [31 Cal.Rptr.3d 147, 115 P.3d 460].)

We also note that in a number of contexts other than those involving claims pertaining to assault and battery, which is the conduct at issue here, courts have in insurance cases rejected the notion that an insured's mistake of fact or law transforms a knowingly and purposefully inflicted harm into an accidental injury. (E.g., *Merced Mutual Ins. Co. v. Mendez, supra*, 213 Cal.App.3d 41 [oral copulation and attempted oral copulation not accidents notwithstanding insured's mistaken belief that victim consented]; *Collin v. American Empire Ins. Co., supra*, 21 Cal.App.4th 787 [misunderstanding of legal rights did not turn conversion of property into an accident]; *Quan v. Truck Ins. Exchange, supra*, 67 Cal.App.4th 583 [rape not transformed into an accident notwithstanding insured's mistaken belief that victim consented]; *Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1 [120 Cal.Rptr.2d 808] [mistaken belief that acts were lawful did not render wrongful eviction of tenant an accident]; *Lyons v. Fire Ins. Exchange* (2008) 161 Cal.App.4th 880 [74 Cal.Rptr.3d 649] [insured's subjective miscalculation of victim's state of mind did not make sexual attack an accident]; see *J. C. Penney Casualty Ins. Co. v. M. K., supra*, 52 Cal.3d 1009 [homeowners policy as a matter of law did not provide coverage for child molestation regardless of lack of intent to harm].)

Here, injured party Delgado advances two different arguments to support his claim that, unlike the above cited decisions pertaining to oral copulation, conversion, rape, wrongful eviction, and child molestation, an actor's unreasonable belief in the need for self-defense converts an assault and battery into an unintentional act and therefore is "an accident" within the policy's coverage. We reject these contentions.

Delgado's first argument relies on a statement by this court in *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] (*Gray*). The issue there was whether an insurance company had a duty to

defend an action alleging that the insured had " 'wilfully, maliciously, brutally and intentionally assaulted' " the plaintiff. (*Id.* at p. 267.) Unlike the case now before us, the policy's coverage clause in *Gray* did *not* define coverage in terms of injuries resulting from "an accident." It stated that the insurer would defend its insured against " 'any suit' " alleging " 'bodily injury or property damage . . . even if any of the allegations are groundless, false or fraudulent.' " (*Ibid.*) In discussing the scope of the policy's exclusion for intentional injury and the rules allowing liberal amendments to pleadings, *Gray* remarked that the insured "might have been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit *wilful* and intended injury, but engaged only in *nonintentional* tortious conduct." (*Gray, supra,* 65 Cal.2d at p. 277, italics added.) Delgado relies on that statement from *Gray* and on several cases that have cited *Gray* for the proposition that acts done in self-defense are unintentional and therefore accidental.

That reliance is misplaced. *Gray* and the cases that have cited it pertained to the question of unreasonable use of force or unreasonable self-defense in the context of an insurance policy's *exclusionary* clauses, not as here in the context of a policy's *coverage* clause. (*Gray, supra,* 65 Cal.2d at p. 266; *Quan v. Truck Ins. Exchange, supra,* 67 Cal.App.4th at pp. 595–596; *David Kleis, Inc. v. Superior Court* (1995) 37 Cal.App.4th 1035, 1048 [44 Cal.Rptr.2d 181]; *Merced Mutual Ins. Co. v. Mendez, supra,* 213 Cal.App.3d at p. 47; *Royal Globe Ins. Co. v. Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435]; *Mullen v. Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163, 170 [140 Cal.Rptr. 605].) At issue here is whether unreasonable self-defense comes within the policy's coverage for "an accident," not whether it falls within a particular policy exclusion.

■ Moreover, *Gray* did not say that an unreasonable belief in self-defense will convert into unintentional acts any purposeful acts that were done with intent to harm. The insurance company in *Gray* contended that it was not obligated to defend its insured against a claim of assault because the policy *excluded* coverage for " 'bodily injury or property damages caused intentionally by or at the direction of the insured.' " (*Gray, supra,* 65 Cal.2d at p. 267.) " '[A]lthough exclusions are construed narrowly and must be proven by the insurer, the burden is on the insured to bring the claim within the basic scope of coverage, and (unlike exclusions) courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage.' " (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 16, quoting *Collin v. American Empire Ins. Co., supra,* 21 Cal.App.4th at p. 803.) A policy clause excluding intentional injury, such as the one in *Gray,* is treated as having the same meaning as the language in Insurance Code section 533, which provides that an insurance company is not liable for a loss

caused by a willful act of the insured. (*Allstate Ins. Co. v. Overton* (1984) 160 Cal.App.3d 843 [206 Cal.Rptr. 823].)

*Gray, supra,* 65 Cal.2d at page 277, stated that an unreasonable belief in the need for self-defense could remove the resulting act from the reach of the policy's exclusion clause for intentional acts (that is, makes the act "nonintentional"). *Gray* did not say, however, that such a belief would convert an intentional act into an unintentional act, as Delgado here asserts. Acceptance of Delgado's argument would render *Gray*'s statement nonsensical, because a purposeful and intentional act remains purposeful and intentional regardless of the reason or motivation for the act. (*Hogan v. Midland National Ins. Co., supra,* 3 Cal.3d at p. 560 [whatever the motivation, a deliberate and calculated act is not an accident]; *Lyons v. Fire Ins. Exchange, supra,* 161 Cal.App.4th at p. 889 [mental miscalculation of victim's state of mind does not transform intentional conduct done with knowledge of objective facts into an accident]; *Swain v. California Casualty Ins. Co., supra,* 99 Cal.App.4th at p. 10 ["We know of no case from this or any other jurisdiction where a harm knowingly and purposefully inflicted was held 'accidental' merely because the person inflicting it erroneously believed himself entitled to do so."].)[2]

Delgado's second argument—that an insured's mistaken and unreasonable belief in the need for self-defense converts the assault into an accidental act—is based on the notion that a provocative act by the injured party turns the insured's physical response into an accidental act. Under this view, the injured party's provocative acts are unforeseen and unexpected from the perspective of the insured, making the insured's responsive acts unplanned and therefore accidental, triggering the policy's coverage for "an accident."

---

[2] Delgado's amicus curiae Steven W. Murray cites this court's decision in *Lowell v. Maryland Casualty Co.* (1966) 65 Cal.2d 298 [54 Cal.Rptr. 116, 419 P.2d 180] as supporting Delgado's claim that acts done in self-defense are accidents. *Lowell,* however, is readily distinguishable from this case. There the policy provided coverage for injuries caused by an accident. The third party sued the insured, alleging assault and battery; the insured tendered the defense of that action to the insurance company, asserting that the assault and battery never happened. (*Id.* at p. 300.) This court held that the insurance company had a duty to defend because the policy promised to defend the insured even against groundless claims, because language in the policy's exclusion clause stated that assault and battery " 'shall be deemed an accident unless committed by or at the direction of the insured,' " and because the exclusionary language was not conspicuous, plain and clear. This court, without further reference to the language in the policy's exclusion clause regarding assaultive conduct committed by the insured, stated that the policy there "categorically states that assault and battery *is to be deemed* an accident, covered by the policy." (*Id.* at p. 301.) *Lowell* reasoned that there the insured could reasonably expect a defense, as the policy stated that the insurer would defend against groundless claims and that " '[a]ssault and battery shall be deemed an accident . . . .' " (*Ibid.*) There is nothing in the policy now before us that would support a conclusion that the insured reasonably expected a defense. Here, unlike the situation in *Lowell,* nothing in the policy defines an assault and battery as accidental conduct.

The source of that argument is a statement by the Court of Appeal in *Merced Mutual Ins. Co. v. Mendez, supra,* 213 Cal.App.3d 41. There the court, in rejecting the argument that an "accident" may have occurred because the insured mistakenly believed the victim consented to a sexual battery and assault, stated that "an 'accident' exists when *any* aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." (*Id.* at p. 50, italics added.) The premise of Delgado's argument is that whenever a provocative act by the injured person is part of the causal chain of events that ultimately led to the insured's injury-causing conduct—here an assault and battery—the insured's conduct should be considered accidental.

Delgado overlooks the context in which the Court of Appeal in *Merced Mutual Ins. Co. v. Mendez, supra,* 213 Cal.App.3d at page 50, made the statement in question. In the same paragraph, the court also observed: "An accident, however, is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage. [Citation.] Clearly, where the insured acted deliberately with the intent to cause injury, the conduct would not be deemed an accident." (*Ibid.*) Thus, the statement upon which Delgado relies—that an accident exists whenever *any* part of the causal events leading to the injury was unintended—referred to events in the causal chain *after* the acts of the insured, not to events preceding the acts of the insured.

Here, Delgado's complaint alleges acts of wrongdoing by the insured against him. Those are the acts that must be considered the starting point of the causal series of events, not the injured party's acts that purportedly provoked the insured into committing assault and battery on Delgado. The term "accident" in the policy's coverage clause refers to the injury-producing acts of the insured, not those of the injured party. (*Quan v. Truck Ins. Exchange, supra,* 67 Cal.App.4th at p. 596; *Collin v. American Empire Ins. Co., supra,* 21 Cal.App.4th at p. 804.) In determining whether the injury is a result of an accident, taking into consideration acts or events before the insured's acts would be illogical and contrary to California case law.

"Any given event, including an injury, is always the result of many causes." (1 Dobbs, The Law of Torts (2001) § 171, p. 414.) For that reason, the law looks for purposes of causation analysis "to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." (Prosser & Keeton on Torts (5th ed. 1984) § 41, p. 264.) In a case of assault and battery, it is the use of force on another that is closely connected to the resulting injury. To look to acts within the causal chain that are antecedent to and more remote from the assaultive

conduct would render legal responsibilities too uncertain. "When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident." (*Merced Mutual Ins. Co. v. Mendez, supra*, 213 Cal.App.3d at p. 50; see *Quan v. Truck Ins. Exchange, supra*, 67 Cal.App.4th at p. 600, fn. 16; see generally *Maples v. Aetna Cas. & Surety Co.* (1978) 83 Cal.App.3d 641, 647–648 [148 Cal.Rptr. 80] ["the term 'accident' unambiguously refers to the event causing damage, not the earlier event creating the potential for future injury"].)

Delgado's argument that the insured's assault was an accidental act because a provocative act by the injured party was unforeseen and unexpected would also be inconsistent with California case law. In *Quan v. Truck Ins. Exchange, supra*, 67 Cal.App.4th 583, the insured was sued for assault and battery based upon the insured's act of forcibly raping the victim. (*Id.* at pp. 587, 588, fn. 5.) In his action against his insurance company for breach of the duty to defend, the insured argued that there was a potential for coverage under a policy insuring against bodily injury caused by an accident (*id.* at p. 592) because he could simply be found negligent or "found to have mistakenly believed the claimant had 'consented' " (*id.* at p. 596). *Quan* rejected the argument that the victim's antecedent act that induced the insured's mistaken belief in consent converted the forcible rape into an "accident." *Quan* first observed that to determine whether an injury resulted from an accident, and thus fell within the policy's coverage, one needs to consider the nature of the insured's act. *Quan* then concluded that the insured's conduct could not have been accidental because it was intentional, and that an unreasonable belief in the victim's consent could not alter the nature of the act of forcible rape itself. (*Id.* at pp. 596–598.) Other courts have come to similar conclusions. (E.g., *Lyons v. Fire Ins. Exchange, supra*, 161 Cal.App.4th 880 [false imprisonment relating to alleged sexual attack not an accident even when insured may have acted under mistaken belief victim would not rebuff advances]; *Modern Development Co. v. Navigators Ins. Co.* (2003) 111 Cal.App.4th 932, 942 [4 Cal.Rptr.3d 528] ["A mistake of fact in an employment termination does not transform the intentional act of terminating an employee into an accident"]; *Swain v. California Casualty Ins. Co., supra*, 99 Cal.App.4th 1 [insured's belief that he was entitled to inflict harm does not transform wrongful eviction into an accident]; *Merced Mutual Ins. Co. v. Mendez, supra*, 213 Cal.App.3d 41 [unreasonable belief in victim's consent did not make oral copulation and attempted oral copulation accidents].)

We conclude here that an insured's unreasonable belief in the need for self-defense does not turn the resulting purposeful and intentional act of assault and battery into "an accident" within the policy's coverage clause. Therefore, the insurance company had no duty to defend its insured in the lawsuit brought against him by the injured party.

The judgment of the Court of Appeal is reversed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

Appellant's petition for a rehearing was denied September 30, 2009.