**Roxanne GORZELA**

v.

**STATE FARM GENERAL INSURANCE, CO., et al.**

**CASE NO.: CV 16–01648 SJO (FFMx)**

United States District Court, C.D. California.

Signed 11/30/2016

Joseph M. Barrett, Terry Robert Bailey, Layfield and Barrettt APC, Los Angeles, CA, Philip J. Layfield, Valerie Lissa Bradbury, William K. Crowe, Layfield and Barrett APC, Irvine, CA, Levi M. Plesset, Layfield & Barrett APC, El Segundo, CA, for Roxanne Gorzela.

Craig Walker Brunet, Edith R. Matthai, Marta A. Alcumbrac, Robie & Matthai, Los Angeles, CA, for State Farm General Insurance, Co., et al.

**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 27]

THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

This matter is before the Court on Defendant State Farm General Insurance Company's ("State Farm" or "Defendant") Motion for Summary Judgment ("Motion") filed October 17, 2016. Plaintiff Roxanne Gorzela ("Gorzela" or "Plaintiff") filed an Opposition to the Motion ("Opposition") on November 7, 2016, to which Defendant filed a Reply on November 14, 2016. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for November 28, 2016. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Defendant's Motion.

I. FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Background

This case is an action for breach of an insurance contract. Plaintiff is a judgment creditor and purported assignee of judgment debtor Mark Salling, a State Farm insured. Plaintiff has filed suit against Defendant State Farm seeking to enforce Salling's rights under his State Farm policy concerning indemnification. Plaintiff also seeks to recover damages stemming from what is alleged to be Defendant's breach of the implied covenant of good faith and fair dealing. (*See generally* Def. State Farm General Ins. Co.'s Notice of Removal ("Removal") 3, ECF No. 1.)

1. Relationship Between Plaintiff and Mark Salling and Basis of Underlying Complaint

On or about September 2010, Plaintiff began dating Mark Salling. (Def.'s App. of Evidence in Supp. of Def.'s Mot. for Summary J. ("ASE") Ex. 2, Filed Cal State Ct. Compl. Against Mark Salling ("Salling Compl.") ¶ 6, ECF No. 29–2.) The two dated for approximately six months. (ASE Ex. 6, State Farm Recorded Interview of Mark Salling ("Salling Interview") 2.) At all times after they began dating, Salling knew that Plaintiff did not consent to unprotected sexual intercourse. (Salling Compl. ¶ 7.) However, in March of 2011, Salling intentionally engaged in unprotected sexual intercourse with Plaintiff. (Salling Compl. ¶ 8.) Following this sexual en-

counter, Salling stopped responding to Plaintiff's calls or text messages. (Def.'s Uncontroverted Facts and Conclusions of Law ("Def.'s Facts") ¶ 7, ECF No. 28.)[1] In the days that followed, Plaintiff became increasingly concerned about the possibility of having contracted a sexually transmitted disease from Defendant. (Def.'s Facts ¶ 7.) On or about March 14 or 15, 2011, Plaintiff confronted Salling at Salling's home while Salling was with another woman. (Def.'s Facts ¶¶ 7, 9.) Plaintiff alleged that she was injured during her visit to Salling's home on March 14 or 15, 2011, and filed a lawsuit seeking recovery for her injuries. (See generally Salling Compl.) In her lawsuit, Plaintiff alleged that Salling grabbed her and pushed her to the ground where she landed on her knees and hit her head. (Def.'s Facts ¶ 9.)

## 2. State Court Action, State Farm's Investigation, and Denial of Coverage

On January 18, 2013, Plaintiff filed suit against Salling in the Los Angeles County Superior Court ("State Court Action"), alleging four causes action: (1) sexual battery; (2) assault and battery; (3) intentional infliction of emotional distress; and (4) negligence. (Def.'s Facts ¶ 1.) On January 25, 2013, Salling tendered the lawsuit to Defendant under his renter's policy. (Def.'s Facts ¶ 2.)[2] State Farm reviewed Plaintiff's State Court Action and interviewed both Salling and his roommate concerning the incident. (Def.'s Facts ¶¶ 25,

34.) State Farm denied Salling's claim on March 13, 2013. (Def.'s Facts ¶ 66.)

### a. Salling's Interview

State Farm representative Laura Teasdale ("Teasdale") interviewed Salling on February 4, 2013. (Def.'s Facts ¶ 25.) In discussing the incident which took place at his house on or about March 15, 2011, Salling stated that he came out of his room when he heard a crash in the front entry. (Def.'s Facts ¶ 29.) Plaintiff started slapping, clawing, and trying to hit him, and he held his arms up in order to defend himself. (Def.'s Facts ¶ 30.) Salling admitted that he wrapped his arms around her, in a " hug like kind of hug," and led Plaintiff out the front door onto the porch. (Def.'s Facts ¶ 30.) Out on the porch, Plaintiff continued to attack Salling. She then suddenly ran down the stairs to Salling's car which was parked outside of the house, keyed it, and left. (Def.'s Facts ¶ 30.) Salling denied observing any injuries to Plaintiff. (Salling Interview 6.)

### b. Roommate's Interview

On February 4, 2013, Teasdale also interviewed Salling's roommate, Jonathan Hernandez ("Hernandez"). Hernandez explained that on the date of the incident, he answered a knock at the front door between 7:00 and 8:00 p.m. to find an unfamiliar woman, Plaintiff, standing before him. (Def.'s Facts ¶ 35, ASE Ex. 5, State Farm Recorded Interview of Jonathan Hernandez ("Hernandez Interview") 1, ECF No. 29-5.) Plaintiff asked to speak with Salling, so Hernandez closed the door

---

1. The Court notes that Plaintiff does not dispute Defendant's Facts ¶¶ 1–54, 56–82. (See Pl.'s Statement of Genuine Issues in Opp'n to Def.'s Motion for Summary J. ("Pl.'s Facts") 2, ECF No. 51.)

2. Salling had a renter's insurance policy with State Farm, effective March 14, 2011 to March 14, 2012. (ASE Ex. 1, Salling Renter's Insurance Policy 1, ECF No. 29-1.) The policy stated that the insurer would pay damages if

its insured became legally obliged to pay due to "bodily injury, personal injury or property damage to which this coverage applies caused by an occurrence." (Def.'s Facts 66.) The policy defined "occurrence" as "[a]n accident, including exposure to conditions, which results in: (a) bodily injury; or (b) property damage; during the policy period." (Def.'s Facts 67.)

to let Salling know. Salling asked Hernandez to tell Plaintiff that he could not come to the door, but that she was welcome to leave a message for him with Hernandez. (Hernandez Interview 2.) Hernandez relayed Salling's message, but Plaintiff was insistent and demanded to see Salling. (Def.'s Facts ¶ 39.)

Hernandez repeated the message to no avail, and eventually closed the door on Plaintiff. Plaintiff then threw herself at the door and forced herself inside, dislocating the door hinge. (Def.'s Facts ¶ 40; Hernandez Interview 3.) When Salling came out, Plaintiff "started screaming and yelling uncontrollably like a lunatic" and tried to hit him and take swings at him. (Hernandez Interview 3.) Salling then grabbed Plaintiff "from sort of like a hug sort of thing . . ." and then took her out to the porch. (Def.'s Facts ¶¶ 41–43, 47.) Outside, Plaintiff kept trying to land blows while Salling braced himself "trying to dodge the . . . punches" and telling her that she needed to leave. (Hernandez Interview 3.) Hernandez did not see Plaintiff fall or how she might have injured herself. (Def.'s Facts ¶¶ 48–50.)

### c. Defendant's Denial of Salling Claim

State Farm obtained the advice of coverage counsel on Salling's claim. In reliance upon that advice, Salling's claim was denied on March 13, 2013. (Def.'s Facts ¶¶ 51–55.) The denial letter explained that there was no right to a defense under his policy because there was no potential that liability would result in damages covered under the policy. (Def.'s Facts ¶ 56.) Salling's counsel asked for reconsideration on the basis that he was defending himself against Plaintiff and that there was no expected or intended injury. (ASE Ex. 14, May 30, 2013 Letter from Lynn A. O'Leary to State Farm Requesting Reconsideration of Claim Denial ("O'Leary Letter") 4, ECF No. 29-14.) In letters dated

May 14, 2013 and June 24, 2013, State Farm reaffirmed its coverage decision. (Def.'s Fact ¶¶ 57–58.)

### 3. Settlement, Stipulation to Liability for Negligence, and Assignment of Rights to Plaintiff

Following Defendant's denial of coverage, Salling assigned his rights against Defendant State Farm to Plaintiff pursuant to a "Mutual Release and Settlement Agreement." Plaintiff dismissed all but her fourth cause of action for negligence in the underlying State Court Action. (Def.'s Facts ¶ 60.) After a prove-up hearing, judgment was entered in favor of Plaintiff in the amount of $2,710,155.28. (ASE Ex. 30, State Court Judgment, ECF No. 29–30.) Plaintiff's counsel tendered the State Court Judgment to Defendant. (Def.'s Facts ¶ 60.) After consulting with coverage counsel, State Farm again reaffirmed its denial. (Def.'s Facts ¶¶ 62–64.)

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Bro-*

kerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 325, 106 S.Ct. 2548. Rather, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (quoting Celotex, 477 U.S. at 322, 106 S.Ct. 2548).

Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Further, "[o]nly disputes over facts that might affect the outcome of the suit ... will properly preclude the entry of summary

judgment [and f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. See id. at 249, 106 S.Ct. 2505. A court is required to draw all inferences in a light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.

## B.  Insurer's Duty to Defend

■ The Court first addresses Defendant's claim that in the absence of potential coverage for the State Court Action, Defendant has no duty to defend Salling. (Mot. 5.) Defendant contends that because the claims arising from the incident at Salling's home stemmed from volitional acts on his part, they do not qualify as a covered occurrence under the policy. (Mot. 15.)[3] Under California law, an insured has the burden of proving its claim falls within the scope of coverage. Upasani v. State Farm Gen. Ins. Co., 227 Cal.App.4th 509, 513–14, 173 Cal.Rptr.3d 784 (2014) (citation omitted). An insurer's duty to defend is evaluated in light of the complaint's allegations, as well as extrinsic facts made known to the insurer at the time the claim is tendered. Id. at 514, 173 Cal.Rptr.3d 784 (citing Montrose Chem. Corp. v. Superior Court, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993)). There is no duty to defend if there is no potential liability within the insuring language of the policy. Waller v. Truck Ins. Exch. Inc., 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995).

---

**3.** Although Defendant argues that Plaintiff's claims of sexual battery, assault and battery, intentional infliction of emotional distress, and negligence do not constitute occurrences under Salling's policy, Plaintiff contends that the sole issue before the Court is predicated on Plaintiff's negligence claim. (Opp'n 12.) Accordingly, the Court only examines whether Plaintiff's negligence action constitutes an occurrence under Salling's policy.

### 1. Salling's Renter's Insurance Policy

"Where the scope of the basic coverage itself is at issue, the insured has the burden of showing that the event is a claim within the scope of the basic coverage." *Hartford Fire Ins. Co. v. Karavan Enter. Inc.*, 659 F.Supp. 1075, 1076 (N.D. Cal. 1986) (citation omitted). Here, Salling's policy provided that the insurer would pay damages if its insured became legally obliged to pay due to "bodily injury, personal injury or property damage to which this coverage applies caused by an occurrence." (Def.'s Facts 66.) The policy defined "occurrence" as "[a]n accident, including exposure to conditions, which results in: (a) bodily injury; or (b) property damage; during the policy period." (Def.'s Facts 67.) The California Supreme Court has held that the term "accident," in the insurance liability context, "refers to the conduct of the insured for which liability is sough to be imposed on the insured." *Delgado v. Interinsurance Exch. of Automobile Club of Southern California*, 47 Cal.4th 302, 311, 97 Cal. Rptr.3d 298, 211 P.3d 1083 (2009) (internal citation omitted). As such, "[t]he term [accident] refers to the nature of the insured's conduct, not his state of mind." *Quan v. Truck Ins. Exchange*, 67 Cal. App.4th 583, 596, 79 Cal.Rptr.2d 134 (1998); *see also Fire Ins. Exchange v. Superior Court*, 181 Cal.App.4th 388, 395, 104 Cal.Rptr.3d 534 (2010) ("the term 'accident' refers to the nature of the conduct itself rather than to its consequences."); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 750, 15 Cal.Rptr.2d 815 (1993) (same). Although Plaintiff's underlying State Court Action identifies Plaintiff's sole contested claim as "negligence," in order to determine whether the claim alleged accidental conduct, the Court must look at what acts were alleged in her complaint. (*See Gonzalez v. Fire Ins. Exchange*, 234 Cal. App.4th 1220, 1235, 184 Cal.Rptr.3d 394 (2015).)

### 2. Allegations of Complaint

In her underlying state court complaint, Plaintiff alleges that Salling "had a duty to refrain from attacking, intimidating or engaging in offensive sexual conduct against Plaintiff." (Salling Compl. ¶ 46.) Salling is further alleged to have "breached his duty ... by engaging in offensive sexual contact ... and by assaulting and battering Plaintiff by pushing her to the ground." (Salling Compl. ¶ 47.) Plaintiff alleges that Salling "knew, or should have known, that such wrongful and outrageous conduct would be substantially certain to cause Plaintiff to suffer embarrassment, humiliation, anger, mental anguish, and severe emotional distress." (Salling Compl. ¶ 49.) The Court finds that Plaintiff's cause of action for negligence is based upon the same deliberate acts as supported in each of the prior state court causes of action. *See Gonzalez*, 234 Cal.App.4th at 1235, 184 Cal.Rptr.3d 394 (quoting *Gunderson v. Fire Ins. Exchange*, 37 Cal.App.4th 1106, 1114, 44 Cal. Rptr.2d 272 (1995)) ("[A]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date."). Accordingly, the Court next addresses whether the extrinsic evidence available to Defendant at the time of its denial otherwise suggested a duty to defend.

### 3. Extrinsic Evidence

■ When determining whether a duty to defend exists, facts extrinsic to the complaint may be considered to determine whether they reveal a possibility that the claim may be covered by the policy. *See Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 213, 846 P.2d 792 (1993). Here, Defendant conduct-

ed interviews of both Salling and his roommate, Jonathan Hernandez. Salling reported that he raised his hands to ward off Plaintiff's slaps, and was "able to hug like kind of hug her arms around her and lead her out the front door onto the porch ...." (Def.'s Facts ¶ 30.) Hernandez confirmed Salling's account indicating that Salling "grabbed [Plaintiff] from like sort of like a hug sort thing," and took her out to the porch, where Salling was "bracing himself trying to dodge [Plaintiff's] punches ...." (Def.'s Facts ¶ 47.) These interviews confirm that any physical contact Salling had with Plaintiff was the result of deliberate acts.

Having determined that Salling's actions were deliberate, the Court turns to Plaintiff's argument that an intentional act may still be accidental if the injury was not intentional and was unexpected. (Opp'n 7.) As support for her argument, Plaintiff relies on *State Farm Fire and Cas. Co. v. Superior ("Wright")*, 164 Cal.App.4th 317, 325, 78 Cal.Rptr.3d 828 (2008). In *Wright*, the insured got into a physical altercation with Joshua Wright wherein the insured picked up Wright and "threw him into the shallow end of [a] swimming pool. Wright landed on the pool's concrete step, which was not covered by water ... [and] sustained a fractured right clavicle." *Wright*, 164 Cal.App.4th at 321, 78 Cal.Rptr.3d 828. There, the insured stated that "he did not intend to hurt Wright ... 'just to get him wet.'" *Id.* at 322, 78 Cal.Rptr.3d 828. The appellate court in *Wright* affirmed the trial court's conclusion that State Farm had a duty to defend, noting that some California decisions had recognized that "an accident can exist when either the cause is unintended or the effect is unanticipated." *Id.* at 326, 78 Cal.Rptr.3d 828. In accordance with *Wright*, Plaintiff contends that because Salling did not intend to injure Plaintiff, a reasonable jury could conclude that Salling's injury-causing conduct was

an accident, giving rise to Defendant's duty to defend. (Opp'n 7.) However, Plaintiff's reliance on *Wright* is misplaced as *Wright* has since been abrogated by *State Farm Gen. Ins. v. Frake*, 197 Cal.App.4th 568, 128 Cal.Rptr.3d 301 (2011).

In *Frake*, the insured struck his friend, John King, in the groin, causing substantial injuries. 197 Cal.App.4th at 571, 128 Cal.Rptr.3d 301. The insured told State Farm that he struck King as part of a consensual game but that he did not intend to injure King. *Id.* King filed a complaint against the insured for negligence, assault and battery, and intentional infliction of emotional distress. *Id.* The insured tendered the case to State Farm under a renter's policy that provided coverage for bodily injury "caused by an occurrence," which the policy defined as "an accident." *Id.* There, the appellate court, informed by the California Supreme Court's decision in *Delgado v. Interinsurance Exchange of the Automobile Club of Southern California*, 47 Cal.4th 302, 97 Cal.Rptr.3d 298, 211 P.3d 1083 (2009), which was decided post-*Wright*, reversed the trial court's determination that State Farm had a duty to defend. *Id.* In doing so, the court adopted the California Supreme Court's holding in *Delgado* that the word accident "refers to the injury-producing acts of the insured." *Frake*, 197 Cal. App.4th 568 at 583, 128 Cal.Rptr.3d 301. Like the insured in *Frake* who intended to strike his friend in the groin area, but did not intend to injure his friend, Salling similarly intended to hug Plaintiff and escort her out of the house but did not intend to injure her. (*See* Def.'s Facts 30; Mot. 11–12; Opp'n 10.) It follows that under California law, the nature of the "injury-causing event" determines whether an accident has occurred; whether the actor intended the result is not relevant. *See Merced Mutual Ins. Co. v. Mendez*, 213 Cal.App.3d 41,

48, 261 Cal.Rptr. 273 (1989) ("[A]ppellants contend an accident occurs even if the acts causing the alleged damage were intentional so long as the resulting damage was not intended. The argument urged by appellants has been repeatedly rejected by the appellate courts."); *Quan v. Truck Ins. Exchange*, 67 Cal.App.4th 583, 599, 79 Cal. Rptr.2d 134 (1998) ("[W]hether the insured intended the harm that resulted from his conduct is not determinative."); *Delgado v. Interinsurance Exchange Automobile Club of Southern California*, 47 Cal.4th 302, 315, 97 Cal.Rptr.3d 298, 211 P.3d 1083 (2009) ("[T]he term accident in the policy's coverage clause refers to the injury-producing acts of the insured . . . ."); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 751, 15 Cal.Rptr.2d 815 (1993) ("[W]here damage is the direct and immediate result of an intended or expected event, there is no accident."); *Fire Ins. Exchange v. Superior Court*, 181 Cal. App.4th 388, 395, 104 Cal.Rptr.3d 534 (2010) ("the term 'accident' refers to the nature of the conduct itself rather than to its consequences."). Accordingly, the Court finds that State Farm had no duty to defend the negligence claim in Plaintiff's underlying State Court Action and **GRANTS** summary judgment to Defendant on the breach of contract claim.

C.   Bad Faith Liability

■   Next, the Court turns to whether Defendant's decision to deny Salling a defense was made in bad faith. "California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (citation omitted). Because Defendant did not breach its agreement with Salling by refusing to defend him in the underlying State Court Action, the Court also **GRANTS** summary judgment to Defendant on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

D.   Insurer's Duty to Indemnify

■   Finally, the Court addresses Defendant's duty to indemnify Salling in the absence of coverage under Salling's renter's policy. Under California law, the duty to defend is broader than the duty to indemnify. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295, 24 Cal. Rptr.2d 467, 861 P.2d 1153 (1993). Accordingly, where there is no duty to defend, as the Court has here concluded, there is also no duty to indemnify. *See Delgado*, 47 Cal.4th at fn. 1, 97 Cal.Rptr.3d 298, 211 P.3d 1083. As such, the Court **GRANTS** Defendant's Motion for Summary Judgment on this count as well.

III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.