[No. B223865. Second Dist., Div. Seven. June 22, 2011.]

STATE FARM GENERAL INSURANCE COMPANY, Plaintiff and Appellant, v.
PATRICK FRAKE et al., Defendants and Respondents.

**COUNSEL**

Robie & Matthai, James R. Robie, Bernadine J. Stolar and Natalie A. Kouyoumdjian for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet and Mitchell C. Tilner for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of Robert McCulloch, Robert J. McCulloch; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Defendants and Respondents.

Oᴘɪɴɪᴏɴ

ZELON, J.—

## INTRODUCTION

After consuming several beers, respondent Patrick Frake struck his friend, respondent John King, in the groin, causing significant injuries. King filed a complaint against Frake for negligence, assault and battery and intentional infliction of emotional distress. Frake tendered the case to appellant State Farm General Insurance Company under a renter's policy that provided coverage for bodily injury "caused by an occurrence," which the policy defined as "an accident." Frake told State Farm he struck King as part of a consensual game and that he did not intend to injure King. Although State Farm did not believe Frake's conduct qualified as "an accident," it agreed to defend the action with a full reservation of its rights. The King case proceeded to trial and the jury awarded King over $400,000.

State Farm then filed a declaratory relief action alleging that it had no duty to defend or indemnify Frake because his conduct did not qualify as an accident within the meaning of his insurance policy. Frake and King each filed cross-complaints alleging breach of contract and the covenant of good faith and fair dealing.

Several months later, the parties filed cross-motions for summary adjudication regarding State Farm's duty to defend. The trial court concluded that the term "accident" applied to deliberate conduct that resulted in unintentional injury and, as a result, there was a triable issue of fact regarding State Farm's duty to defend. The court further ruled that because there was this potential for coverage, Frake and King had established that State Farm had a duty to defend. The parties thereafter entered into a stipulated judgment against State Farm in the amount of $670,000.

On appeal, State Farm argues that the trial court erred in concluding that a deliberate act may qualify as an "accident" if the insured did not intend to cause the resulting injury. We agree and reverse the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Injury-causing Event*

In September of 2004, respondent John King invited respondent Patrick Frake and two other high school friends to visit him in Chicago. The purpose of the trip was to "enjoy a baseball game" and "party and drink" at various "bars and . . . drinking locations . . . around the City." Throughout the weekend, the friends engaged in a form of consensual "horseplay" that involved "hitting each other in the groin" and other areas of the body.

On Friday, September 10, King, Frake and their friends attended a baseball game, where Frake became "very intoxicated." After leaving the game, King tried to strike Frake in the groin, but Frake blocked the attempt. Shortly thereafter, Frake retaliated by throwing his arm out to the side, where King was standing, and struck King in the groin.

The group traveled back to King's apartment and later went to dinner. On Saturday, they attended a college football game and walked around the Northwestern University campus. Throughout the weekend, King never mentioned that he was in any pain or discomfort. Frake left Chicago on Sunday, September 12.

Shortly after he left Chicago, a friend told Frake that King had sustained significant injuries as the result of Frake's strike to the groin. Frake was "shocked" because he did not believe there was anything "out of the ordinary" about his conduct. King later contacted Frake and requested that he pay his medical bills, which amounted to more than $70,000.

B.  *King's Lawsuit and State Farm's Initial Investigation*

On September 7, 2006, King filed a complaint against Frake alleging negligence, assault and battery and intentional infliction of emotional distress. The complaint described the injury-causing event in a single paragraph: "On or about September 10, 2004, Defendant FRAKE was visiting Plaintiff in Chicago with other high school friends when they were returning home from a Chicago Cubs baseball game at Wrigley Field. At that time, Defendant FRAKE was engaged in horseplay, drunken and disorderly conduct, while grabbing and striking Plaintiff's person without authorization. Plaintiff repeatedly requested that Defendant FRAKE cease his obnoxious behavior. While walking eastbound on East Chicago Avenue, at or near the south entrance to the Park Hyatt Hotel, Chicago, Defendant FRAKE struck Plaintiff in the groin with his closed [fist], causing Plaintiff to double over in pain. Defendant FRAKE laughed triumphantly in having achieved a direct hit to Plaintiff's testicles, while he screamed various swear words . . . ." The complaint alleged that as a result of Frake's conduct, King had sustained numerous injuries including "hematocele on the right scrotum . . . epididymal head cyst . . . chronic regional pain syndrome/reflex sympathetic dystrophe [and] nerve injury."

Frake tendered the defense of King's lawsuit to State Farm General Insurance Company pursuant to a "renters policy" that provided coverage for damages because of bodily injury caused by an occurrence. The policy defined the term "occurrence" as an "accident . . . which results in bodily injury . . . during the policy period."

State Farm reviewed King's complaint and initiated an investigation of the claim. State Farm first contacted Frake's mother, who stated that Frake, King and their friends had a "tradition" of "grabbing each other's testicles." Frake's mother and other parents had repeatedly warned their children against engaging in such conduct because they feared "someone might get hurt." Despite these warnings, the "behavior continued."

On October 24, 2006, State Farm interviewed Frake about the incident and recorded his statement. Frake explained that, since high school, his friends had engaged in "a cycle of horseplay[,] specifically . . . hitting each other in the groin." During this "consensual" ritual, one person would normally try to "slap or hit [another person] in . . . the groin area," and the recipient would then "attempt to return [the slap or hit]." According to Frake, the practice was so common that his friends would "greet each other with a one arm hug," while covering their "groin area" with the other arm for "protection in case [someone] decided to . . . instigate th[e] horseplay."

Frake stated that, during his visit to Chicago, King and his friends had, "per usual," been engaging in "horseplay . . . [that] continued throughout the whole weekend." After attending a baseball game, King and Frake were on an escalator when King attempted to hit Frake in the groin. Frake later retaliated by swinging his arm out to the side with the intent to strike King in the area of his stomach or groin. Frake stated that the strike was intended to "surprise" King, explaining "I felt like he had attempted to . . . horseplay with me on the escalator and then I was gonna . . . horseplay back at him."

When the State Farm investigator asked Frake whether he had intended to hit King directly in the groin, Frake stated, "no . . . not [on] this particular incident." Frake further explained that he was trying to strike King in the general area of the stomach or groin, but "just happened" to hit him directly in the groin. Frake also stated that he was "shocked" that King was hurt because he never intended to "inflict harm or pain purposefully."

Frake also denied that he had hit King with a closed fist, explaining "it was never, we never . . . hit each other it was never a closed [fist]. If it was a closed fist [the hit] was . . . on the arm or something like that. That was but never ever we knew I mean you don't punch someone in the . . . groin area. Obviously it's . . . painful regardless if you get hit in . . . the groin area so it was always with a backhand . . . never a closed fist, always with an open hand."

C. *State Farm's Agreement to Defend Frake with a Reservation of Rights*

On November 9, 2006, State Farm informed Frake that, based on its investigation, there was no "potential for coverage for this lawsuit" because

"the plaintiff has alleged no accidental conduct on your part, as is required in order to constitute an occurrence as defined [in the policy]."

Almost a year later, on October 2, 2007, Frake's counsel requested that State Farm reconsider its position in light of a recent appellate decision which held that an insured's allegation that he had acted in self-defense was sufficient to establish that the conduct was accidental, thereby giving rise to the insurer's duty to defend. Frake's counsel further requested that State Farm respond in a timely manner because trial was set to begin on November 13, 2007.

A week before trial, State Farm informed Frake's counsel that it did not believe it had a duty to defend or indemnify Frake, but agreed to "provide . . . a defense, as of your October 2, 2007 request for reconsideration, pursuant to a full reservation of rights." State Farm explained that "the defense provided is without a waiver of our position that there is no coverage afforded for these claims," and specifically reserved its right to "file a declaratory relief action to obtain the court's determination with respect to whether there is a duty to defend or indemnify your client from these claims," and "seek reimbursement of attorney's fees and costs expended on your client's behalf in the defense of this matter."

State Farm also reiterated why it did not believe the incident fell within the policy coverage, stating, "it is alleged that . . . Frake[] struck John King in the groin. Such allegations involve purposeful, deliberate conduct which does not qualify as an accident under the . . . Policy."

### D. *The King Trial*

King's case against Frake proceeded to trial solely on a negligence theory. Frake's trial testimony was substantially consistent with the statement he had given State Farm during its initial investigation of the claim. Specifically, Frake stated that, since high school, he and his friends had engaged in a "physical touching game," which he described as "hitting each other in the arm, the back, the stomach, grabbing . . . the groin . . . as well as the butt." Frake stated that such acts were not intended to elicit a "temporary response of pain," but rather it was a game, "just like tag."

Frake further testified that, when he was visiting Chicago, he and King "continue[d] to engage in this game of testicular tagging," and that King tried to hit him in the groin at least three times during the first two days of the trip. Frake stated that when he retaliated by hitting King in the groin, he had not

used any more force than was ordinarily used during the game, and that he had not intended to injure King.

The jury found that Frake had acted negligently and awarded King over $450,000 in damages. After the judgment was entered, "Frake and King entered into an agreement in which, in exchange for a covenant not to execute on the judgment, Frake assigned King all assignable claims against State Farm arising from its failure to defend and indemnify him."

### E.   State Farm's Declaratory Relief Action

On November 14, 2007, State Farm filed a declaratory relief action seeking a determination of its obligation to defend and indemnify Frake in the King action. Frake and King, who were both named as defendants, filed cross-complaints alleging that State Farm's refusal to defend or indemnify Frake constituted a breach of contract and a breach of the implied covenant of good faith and fair dealing.[1]

Several months later, State Farm filed motions for summary judgment on its declaratory relief action and Frake and King's cross-complaints. State Farm argued that Frake's recorded statement established that it had no duty to defend the action because Frake admitted that he intentionally struck King.

At the hearing on State Farm's motions for summary judgment, the trial court noted that the allegations in King's complaint were "very contradictory" to Frake's description of the events at trial. The court concluded that, under *State Farm Fire & Casualty Co. v. Superior Court* (2008) 164 Cal.App.4th 317 [78 Cal.Rptr.3d 828] (*Wright*), the term "accident" may include instances in which "an injury is an unexpected or unintended consequence of the insured's conduct." According to the trial court, the *Wright* decision was "strongly favorable to plaintiffs' position" because (1) the case involved similar policy language, and (2) the appellate court found a duty to defend despite the insured's allegation that his deliberate act was not intended to harm the victim.

Following the hearing, the trial court issued a minute order denying State Farm's motions for summary judgment, stating that "a triable issue of fact remains as to whether or not State Farm had knowledge of extrinsic facts that created a potential for coverage at the time that its insured Frake demanded a defense."

---

[1] In addition, King asserted a direct action against State Farm pursuant to Insurance Code section 11580 as a judgment creditor.

In February of 2009, Frake and King filed motions for summary adjudication arguing that because the trial court found there were triable issues of fact precluding State Farm's motion for summary judgment, State Farm was, as a matter of law, required to tender a defense in the underlying action. The trial court agreed, explaining: "[T]his court's denial of State Farm's prior . . . summary judgment motion establishes the potential for coverage. . . . [W]here an insurer seeks but fails to negate coverage on summary judgment, its duty to defend is established because the existence of triable issues whether the insured's alleged misconduct is covered, translated into the 'potential' for coverage."

On October 7, 2009, State Farm sought and obtained the trial court's permission to renew its motion for summary judgment based on the California Supreme Court's decision in *Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302 [97 Cal.Rptr.3d 298, 211 P.3d 1083] (*Delgado*). State Farm argued that *Delgado* "clarifie[d] what is required to establish an occurrence" for the purposes of a general liability policy, and was therefore integral to the issues presented in the declaratory relief action.

On November 30, 2009, the trial court heard State Farm's renewed motion for summary judgment and ruled that *Delgado* did not alter the outcome of the case. The court concluded that *Delgado* held only that "an insured's unreasonable belief in the need for self-defense does not turn the resulting purposeful and intentional act of assault and battery into 'an accident' within the policy's coverage clauses." The trial court further explained that the "narrow" decision "only declare[d] 'new' law in the 'self-defense' context" and did "not affect . . . *Wright*['s]" holding that an insurer has a duty to defend "where the facts [are] such that the insured acted deliberately, but did not intend the resulting injury."

Following the trial court's ruling, the parties entered into a stipulation for entry of judgment against State Farm, which was intended to facilitate State Farm's appeal of the dispositive coverage issue in this case.[2] On March 5, 2010, the trial court entered judgment in favor of Frake and King in the stipulated amount of $670,000. State Farm filed a timely appeal.

---

[2] The California Supreme Court has recognized that a party may appeal a stipulated judgment that is entered into " 'to facilitate an appeal following adverse determination of a critical issue. . . .' " (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 399–402 [87 Cal.Rptr.2d 453, 981 P.2d 79].)

## DISCUSSION

### A. *Summary of Applicable Legal Principles*

#### 1. *Standard of review*

"We review an order denying a motion for summary judgment de novo. [Citation.] Summary judgment is properly granted when the papers show there is no triable issue of material fact, and the moving party is entitled to judgment as a matter of law. [Citation.]" (*Hill Brothers Chemical Co. v. Superior Court* (2004) 123 Cal.App.4th 1001, 1005 [20 Cal.Rptr.3d 530] (*Hill Brothers*).) The interpretation and application of an insurance policy to undisputed facts presents a question of law subject to this court's independent review. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619] ["whether . . . policy provides . . . a duty to defend . . . is a question of law"]; *Hill Brothers, supra,* 123 Cal.App.4th at p. 1005 ["Issues of law, including statutory construction and the application of that construction to a set of undisputed facts, are subject to this court's independent review."].)

#### 2. *Summary of the duty to defend*

■ The issue in this case is whether State Farm had a duty to defend its insured, Patrick Frake, in an action brought by respondent King. " '[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. [Citation.] . . . "[T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." [Citation.] Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify . . . .' [Citation.]"[3] (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose*).) " 'Hence, the duty "may exist even where coverage is in doubt and ultimately does not develop." [Citation.]' [Citation.]" (*Ibid.*)

■ "To prevail in an action seeking declaratory relief on the question of the duty to defend, 'the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall

---

[3] "Because the duty to defend is broader than the duty to indemnify [citation], a conclusion that [State Farm] did not have a duty to defend will be dispositive of [respondents'] claim that [State Farm] had a duty to indemnify. That conclusion is also dispositive of [respondent King's] claim that he is a judgment creditor under Insurance Code section 11580, subdivision (b)(2)." (*Delgado, supra,* 47 Cal.4th at p. 308, fn. 1.)

within policy coverage; the insurer must prove it *cannot*.' [Citation.]" (*Delgado, supra*, 47 Cal.4th at p. 308.)

■ " 'The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. [Citation.]' [Citation.] . . . '[T]he existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit. [Citation.]' " (*Montrose, supra*, 6 Cal.4th at p. 295.) We therefore must identify " 'the information available to the insurer at the time of the tender of the defense.' " (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 519 [115 Cal.Rptr.3d 42].)

### B. *Summary of Information Available to State Farm at the Time of Tender*

At the inception of the King lawsuit, State Farm had two sources of information regarding King's claims: King's complaint and the recorded statement that Frake provided to State Farm after the complaint was filed.

King's complaint alleges that, after repeatedly "grabbing and striking Plaintiff's person without authorization," Frake "struck Plaintiff in the groin with his closed fist" and then "laughed triumphantly in having achieved a direct hit to Plaintiff's testicles . . . ." Thus, the complaint clearly alleges that Frake deliberately struck King in the groin. However, it includes no allegations regarding whether Frake intended to injure King.

Frake's recorded statement contains additional, although somewhat contradictory, information about the events in question. Frake admitted that he intentionally struck King as part of a game he and his friends had played since high school. Although Frake denied that he intended to strike King directly in the groin or that he used a closed fist, he admitted that "his goal was to strike King in that general area, which is what he and his friends had done countless times in the past." Frake also stated that he had not used any more force than was normal during "horseplay," and did not intend to cause any harm or pain.[4]

---

[4] Frake's allegation that he did not intend to cause any pain by striking King in the groin appears dubious in light of other statements he made to State Farm. When asked whether he hit King with a closed fist, Frake stated that he did not, explaining that his friends always used an open hand when trying to strike each other in the groin because getting hit in that area was "painful regardless" of whether you hit with a closed fist or open hand. This comment

C. *The Evidence Establishes that State Farm Did Not Have a Duty to Defend*

State Farm argues that the trial court erred in concluding that Frake's deliberate act of striking King qualified as an accident because he did not intend to injure King.

  1. *The term "accident" does not apply to deliberate conduct that directly causes injury, regardless of whether the injury was intended*

█ "Under California law, the word 'accident' in the coverage clause of a liability policy refers to the conduct of the insured for which liability is sought to be imposed on the insured." (*Delgado, supra*, 47 Cal.4th at p. 311.) Our courts have repeatedly held that "the term 'accident' does not apply to an act's consequences, but instead applies to the act itself." (*Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 750 [15 Cal.Rptr.2d 815] (*Shell Oil*); see also *Fire Ins. Exchange v. Superior Court* (2010) 181 Cal.App.4th 388, 395 [104 Cal.Rptr.3d 534] (*Fire Ins. Exchange*) ["the term 'accident' refers to the nature of the conduct itself rather than to its consequences"].)

These cases make clear that "[a]n accident does not occur when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." (*Fire Ins. Exchange, supra*, 181 Cal.App.4th at p. 392; see also *Delgado, supra*, 47 Cal.4th at p. 315; *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766, 781 [115 Cal.Rptr.3d 27]; *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50 [261 Cal.Rptr. 273] (*Merced*).) As recently explained by the Fourth District, "[w]here the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury. [Citations.] The insured's subjective intent is irrelevant. [Citations.] Indeed, it is well established in California that the term 'accident' refers to the nature of the act giving rise to liability; not to the insured's intent to cause harm." (*Fire Ins. Exchange, supra*, 181 Cal.App.4th at pp. 392–393, fn. omitted; see also *Merced, supra*, 213 Cal.App.3d at p. 48 ["appellants contend an accident occurs even if the acts causing the alleged damage were intentional as long as the resulting damage was not intended. The argument urged by appellants has been repeatedly rejected by the appellate courts."].)

---

demonstrates that Frake was aware that his open-handed strike to King's groin was likely to cause some amount of pain. Nevertheless, we will assume that Frake did not intend to cause pain.

The language of the policy at issue here, which is the same language used in most standard liability policies, supports the conclusion that the term "accident" refers to the insured's conduct, rather than the unintended consequences of that conduct. The policy provides coverage for "bodily injury . . . caused by an occurrence." The term "occurrence" is defined as "an accident." Therefore, under the policy, "an 'occurrence' is a causal event, defined as an 'accident.' In this context, an 'accident' cannot mean unintended damage because the causal event also would be the result. Logically, a consequence cannot cause itself." (*Shell Oil, supra,* 12 Cal.App.4th at p. 750; see also *Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 596 [79 Cal.Rptr.2d 134] (*Quan*) [" 'the insurer only promises to indemnify or defend actions involving bodily injury caused by *an accident* resulting in bodily injury . . . . An intentional act is not an "accident" within the plain meaning of the word. [Citations.] The same roadblock at the definition of "accident" halts any argument claiming the [insured] intended his act but not the resulting harm.' "].)

■ That does not mean, however, that coverage is " 'always precluded merely because the insured acted intentionally and the victim was injured.' " (*Quan, supra,* 67 Cal.App.4th at p. 598.) Rather, an accident may exist "when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." (*Merced, supra,* 213 Cal.App.3d at p. 50; see also *Shell Oil, supra,* 12 Cal.App.4th at p. 751 ["we should not be misunderstood as suggesting that an expected or intended act at any point in the causal chain of events means that any resulting damage was not caused by accident"].) However, "where damage is the direct and immediate result of an intended . . . event, there is no accident." (*Shell Oil, supra,* 12 Cal.App.4th at p. 751.)

The following example is illustrative: "When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury—hitting the other car—would be intentional and any resulting injury would be directly caused by the driver's intentional act." (*Merced, supra,* 213 Cal.App.3d at p. 50.)

■ Applying these principles, State Farm had no duty to defend in this matter. Frake admits that he intended to strike King in the groin area and there is no dispute that King suffered injuries as a direct result of the strike. Therefore this is not a case where some "unexpected, independent, and unforeseen happening" in the causal chain produced the resulting harm. (*Fire*

*Ins. Exchange, supra,* 181 Cal.App.4th at p. 392.) Rather, King's injuries were "the direct and immediate result of an intended . . . event." (*Shell Oil, supra,* 12 Cal.App.4th at p. 751.) The mere fact that Frake did not intend to injure King does not transform his intentional conduct into an accident.[5]

> 2. Delgado *and* Wright *do not establish a duty to defend under the circumstances of this case*

Respondents argue that, despite the well-established legal principles discussed above, the trial court's conclusion that the term "accident" applies to deliberate conduct that results in unintended harm finds support in *Delgado, supra,* 47 Cal.4th 302, and *Wright, supra,* 164 Cal.App.4th 317.

> a. Delgado *did not alter the well-established definition of the term "accident"*

Respondents contend that in *Delgado, supra,* 47 Cal.4th 302, the California Supreme Court adopted a definition of the term "accident" that applies whenever "the effect" of an intentional act "is unanticipated." Thus, according to respondents, *Delgado* overruled all prior cases holding that "an accident necessarily refers to the injury-causing act itself and not to the consequences of that act."

The issue presented in *Delgado* was whether an assault and battery that was "motivated by an unreasonable belief in the need for self-defense" qualified as an "accident," thereby giving rise to the duty to defend. (*Delgado, supra,* 47 Cal.4th at p. 308.) The court concluded that the insurer had no such duty because "an insured's unreasonable, subjective belief in the need for self-defense" does not "convert[] into 'an accident' an act that is purposeful and intended to inflict injury." (*Id.* at p. 311.) In reaching its holding, the court explained that "in a number of contexts . . . , courts have in insurance cases rejected the notion that an insured's mistake of fact or law transforms a knowingly and purposefully inflicted harm into an accidental injury." (*Id.* at p. 312.) Therefore, the actual holding of *Delgado* does not appear to have had

---

[5] Respondents contend that Frake's assertion that he did not specifically intend to strike King in the testicles renders his conduct accidental. In respondents' view, the fact that Frake's arm hit King in that location was an intervening act of fortuity that was the direct cause of King's injury. Although Frake denies that he directly targeted King's testicles, he admits his intent was to strike King in the area of the groin. The fact that Frake hit a specific spot within the area that he was targeting does not qualify as an "unexpected" or "unforeseen happening." (*Fire Ins. Exchange, supra,* 181 Cal.App.4th at p. 392 ["[a]n accident does not occur when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage"].) Indeed, by targeting the area of King's groin, it was completely foreseeable and expected that Frake might strike King's testicles, as apparently had happened numerous times in the past.

any effect on prior cases ruling that the term "accident" refers to the insured's acts, and not the consequences of those acts.[6]

Respondents, however, argue that a single passage in *Delgado* effectively broadened the definition of "accident" to include instances in which a deliberate act results in unintended consequences. The relevant passage states that "[i]n the context of liability insurance, an accident is ' "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." ' " (*Delgado, supra,* 47 Cal.4th at p. 308.) Respondents contend that the court's reference to unintended "happenings or consequences" demonstrates that *Delgado* redefined " 'accident' " to include "the unintended consequences of the insured's intentional acts."

■ There are two problems with this argument. First, respondents ignore the fact that in a later portion of the opinion, *Delgado* clarified the meaning of the passage cited above, which originally appeared in *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558 [334 P.2d 881]. According to *Delgado,* the language in *Geddes* demonstrated that "it is the 'unexpected, undesigned, and unforeseen' nature of the injury-causing event that determines whether there is an 'accident' within the policy's coverage." (*Delgado, supra,* 47 Cal.4th at p. 309.) Throughout *Delgado,* the court reiterates that "the term 'accident' in the policy's coverage clause refers to the injury-producing acts of the insured . . . ." (*Id.* at p. 315.) These statements appear to reaffirm prior case law holding that the nature of the "injury-causing event" determines whether an accident has occurred, not the nature of the resulting injury.

Second, in reaching its holding, *Delgado* discusses with approval *Merced, supra,* 213 Cal.App.3d 41, and *Quan, supra,* 67 Cal.App.4th 583. Both of those cases ruled that the term "accident" does not apply where an intentional act resulted in unintended harm. (See *Merced, supra,* 213 Cal.App.3d at p. 48 ["appellants contend an accident occurs even if the acts causing the alleged damage were intentional as long as the resulting damage was not intended. The argument urged by appellants has been repeatedly rejected by the appellate courts."]; *Quan, supra,* 67 Cal.App.4th at p. 599 ["whether the insured intended the harm that resulted from his conduct is not determinative. The question is whether an accident gave rise to claimant's injuries."].) The Supreme Court's approval of these decisions directly contradicts respondents' assertion that the court intended to overrule such holdings.

---

[6] If anything, *Delgado*'s recognition that an intentional act is not transformed into an accident merely because the insured mistakenly believed he or she had a legal right to engage in such conduct would appear to support State Farm's position; in such cases, the deliberate act was intentional, but the resulting legal harm was unintended. The same is true here.

In sum, *Delgado* contains no language indicating that the California Supreme Court intended to overrule prior case law holding that "the term 'accident' does not apply to an act's consequences, but instead applies to the act itself." (*Shell Oil, supra,* 12 Cal.App.4th at p. 750.) Instead, the court directed that the word accident "refers to the injury-producing acts of the insured" (*Delgado, supra,* 47 Cal.4th at 315), and specifically approved prior case law that rejects the very argument respondents present here.

### b. Wright *does not establish a duty to defend in this case*

Respondents also argue that the trial court's decision was a proper application of *Wright, supra,* 164 Cal.App.4th 317, which includes language suggesting that the term "accident" encompasses deliberate conduct that results in unintended harm.

### i. *Summary of* State Farm v. Wright

In *Wright,* the insured, Jeffrey Lint, was at a party when he got into an argument with Joshua Wright. After the two exchanged words, Lint picked up Wright and "threw him into the shallow end of [a] swimming pool. Wright landed on the pool's concrete step, which was not covered by water . . . [and] sustained a fractured right clavicle . . . ." (*Wright, supra,* 164 Cal.App.4th at p. 321.) Lint later stated that he "did not intend to hurt Wright . . . '[j]ust to get him wet' " (*id.* at p. 322), and Wright "characterized the incident as 'horse-playing around' " (*id.* at p. 321). Lint was arrested for the swimming pool incident and pled no contest to a charge of misdemeanor battery.

Wright filed a complaint against Lint, alleging negligence and other claims. Lint tendered the defense to State Farm under an insurance policy that contained identical language to the policy at issue here. After conducting an investigation, State Farm "informed Lint that it was denying a defense and indemnity" because " 'the actions do not arise out of an accident.' " (*Wright, supra,* 164 Cal.App.4th at p. 322.) Lint thereafter filed a declaratory relief action asserting that State Farm's "policy covered his acts." (*Ibid.*) The trial court concluded that State Farm had a "duty to defend" because the injury was "an unexpected or unintended consequence of the insured's conduct . . . ." (*Id.* at p. 323.)

The appellate court affirmed, noting that some California decisions had recognized that "an accident can exist when either the cause is unintended or the effect is unanticipated." (*Wright, supra,* 164 Cal.App.4th at p. 326.) The court further explained that Wright's injuries were not caused by Lint's act of throwing Wright in the pool, but were the result of Lint's miscalculation regarding the amount of force necessary to throw Wright over the concrete

step: "Although [Lint] deliberately picked Wright up and threw him at the pool, Lint did not intend or expect . . . that Wright would land on a step. Lint miscalculated one aspect in the causal series of events leading to Wright's injury, namely, the force necessary to throw Wright far enough out into the pool so that he would land in the water. It is undisputed that Lint did not intend to hurt Wright; he merely intended that Wright land farther out into the water and 'get . . . wet.' . . . [Therefore,] the act directly responsible for Wright's injury, throwing too softly so as to miss the water, was an *unforeseen or undesigned happening or consequence* and was thus fortuitous." (*Wright, supra,* 164 Cal.App.4th at pp. 328–329.)

### ii.   Wright *does not control the outcome of this case*

Respondents contend that, under *Wright,* the trial court properly concluded that Frake's intentional act of striking King qualified as an accident because he did not intend to cause the resulting injury. We do not believe this case is controlled by *Wright.*

First, the facts here are distinguishable. As discussed above, *Wright* concluded that although Lint meant to throw Wright into the pool, the fact that Wright landed on the concrete step constituted an intervening act of fortuity which was the direct cause of Wright's injury. Here, however, there was no intervening or unintended act between Frake's conduct and King's injury. Frake deliberately struck King in the area of his groin and the strike caused King's injury. Thus, unlike *Wright,* this is not a case where Frake committed one act that caused another unintended event, which then caused King's injuries.[7]

Second, *Wright* was decided before the Supreme Court issued *Delgado,* which clarified the definition of the term "accident." As discussed above, *Delgado* repeatedly states that "[t]he term 'accident' in the policy's coverage clause refers to the injury-producing acts of the insured . . . ." (*Delgado, supra,* 47 Cal.4th at p. 315.) *Wright,* however, includes language suggesting that the court believed the term "accident" may refer to the injury that resulted from an intentional act, rather than the injury-producing act itself. The *Delgado* decision also clarified that an intentional act is not transformed into an accident merely because the insured was operating under some mistake of fact. This holding stands in contrast to the reasoning of *Wright,* which ruled that Lint's mistake regarding the amount of "force necessary to throw Wright far enough out into the pool" was sufficient to transform his behavior into an accident. (*Wright, supra,* 164 Cal.App.4th at p. 328.)

---

[7] The facts of *Wright* would be more analogous to the circumstances here if Lint had intended to throw Wright onto the concrete stair, but denied any intent to injure him.

Third, to the extent *Wright* ruled that the term "accident" applies to deliberate acts that directly cause unintended harm, such a holding is contradictory to well-established California law. We are not aware of any California decision that has cited *Wright* approvingly or adopted its analysis. Indeed, the only published California case that has discussed *Wright* questioned its holding, stating that the decision "seems to stand in variance" (*Fire Ins. Exchange, supra,* 181 Cal.App.4th at p. 393 & fn. 1) to the "well[-]established [rule] . . . that the term 'accident' refers to the nature of the act giving rise to liability; not to the insured's intent to cause harm." (*Id.* at p. 393.)

## DISPOSITION

The trial court's judgment is reversed. The trial court is directed to enter judgment in favor of State Farm. Appellant is to recover its costs on appeal.

Perluss, P. J., and Jackson, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 28, 2012, S195847.