Filed 7/23/13  Diab v. Mid Century Ins. Co. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

<table>
<tr><td>NAEL DIAB,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>MID CENTURY INSURANCE<br>COMPANY,<br><br>      Defendant and Respondent.</td><td>B241538<br><br>(Los Angeles County<br>Super. Ct. No. BC 466333)</td></tr>
</table>

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Reversed.

Glaser Damone & Schroeder and Robert P. Damone for Plaintiff and Appellant.

Archer Norris and Limor Lehavi for Defendant and Respondent.

\* \* \* \* \* \*

Plaintiff Nael Diab appeals from the judgment in favor of defendant Mid Century Insurance Company (Mid Century) after the trial court granted Mid Century's motion for summary judgment. Diab's action against Mid Century is an insurance coverage dispute relating to the duty to defend and indemnify him in a tort suit brought by Michelle Nunez (*Nunez* Action). Diab contends there were triable issues of fact relating to the duty to defend that precluded summary judgment. We agree and reverse the judgment.

## FACTUAL BACKGROUND

### 1. *The Insurance Policy*

Diab purchased a homeowners insurance policy from Mid Century that was in effect during the period relevant to this case. The insuring clause of the policy stated in pertinent part: "We will pay those damages which an insured becomes legally obligated to pay because of: [¶] 1. bodily injury resulting from an occurrence . . . . [¶] . . . [¶] At our expense and with attorneys of our choice, we will defend an insured against any suit seeking damages covered under [this section]. . . . [¶] We do not have any duty to defend or settle any suit involving actual, alleged, threatened or declared bodily injury or property damage not covered under this liability insurance. This applies whether or not the suit is groundless, false or fraudulent." (Boldface omitted.)

The policy defined bodily injury as "physical harm to the body, including physical sickness or disease, to a person other than an insured." (Boldface omitted.) It defined an occurrence as "an accident . . . which results in bodily injury . . . ." (Boldface omitted.)

### 2. *The* **Nunez** *Action*

Nunez is the widow of Amr Ramadan. She filed the *Nunez* Action on February 5, 2010, as successor in interest to Ramadan and guardian ad litem for her six minor children. The *Nunez* Action alleged as follows. On or about September 26, 2009, Ramadan and some friends were gathered at a restaurant in Hermosa Beach around 11:00 p.m. Ramadan overhead an acquaintance talking to Diab on the telephone, and Ramadan jokingly made a comment about Diab. Diab heard the comment through the telephone. Within minutes, he arrived at the restaurant in a rage and wielding a wine bottle. He approached Ramadan from behind and began yelling and verbally abusing Ramadan. Friends took the wine bottle away

2

from him. He was aware that Ramadan was ill and had a serious heart condition, but he nevertheless continued to threaten Ramadan, including telling Ramadan he was going to kill him. At some point, he found an empty large storage crate and threw it at Ramadan, striking him in the arm and side of the chest. Almost immediately after that, Ramadan grabbed his left arm and complained of pain to his friend. Ramadan reached for his phone to call 911, but Diab kicked the phone out of his hand. Ramadan then left the restaurant with a friend, and Diab followed. Within less than a block, Ramadan, who was driving, complained of increasingly severe chest pain and lost consciousness. His friend was able to gain control over the car and bring it to a stop. The friend called paramedics. Diab arrived at the scene and continued to verbally abuse Ramadan, including saying that he was "glad" Ramadan was "dead." Paramedics took Ramadan to the hospital, where he was in full arrest and pronounced dead about 12:14 a.m. on September 27, 2009.

In Ramadan's autopsy report dated December 9, 2009, the medical examiner opined "that the verbal altercation and assault with the bread crate produced a surge of catecholamines, which are associated with 'fear and flight'. This in turn increased the irritability of the already diseased myocardium, making it more susceptible to fatal arrhythmias. The decedent most likely had a fatal arrhythmia with clinical symptoms of myocardial infarction, leading to his demise. [¶] The cause of death is opined to be coronary artery disease due to atherosclerotic cardiovascular disease. . . . Because of the temporal relationship between the prior verbal altercation with assault and the onset of cardiac arrest, the manner of death is opined to be homicide."[1] The complaint alleged causes of action against Diab for assault and battery and wrongful death.

### 3. *Mid Century's Investigation and Denial of the Claim*

Diab sent the *Nunez* complaint to Mid Century on or around April 21, 2010. Mid Century general adjuster Marcie Mendes conducted an investigation into Diab's claim. She obtained a statement from Diab, which she recorded and had transcribed. His statement was

---

[1] The autopsy report, which is part of the record, is accurately quoted in the *Nunez* complaint.

as follows. Diab was talking to his friend on the telephone on September 26, 2009, and he heard somebody in the background calling him names and insulting him. His friend told him that it was Ramadan in the background. Diab had seen Ramadan probably four times and knew who he was. Diab told his friend he was "comin' right now." He drove to the restaurant where his friend was located and parked across the street. He asked Ramadan from his van why he was saying insulting things about him. Ramadan insulted him some more, called his mother names, and said if he was a "man," he would come out of the car. Diab stepped out of his van and some friends came up and held him back from Ramadan. There were about seven or eight people in the area, and Diab did not know who was or was not his friend. He took a bottle of wine from his van and held it behind his back. One man took the bottle of wine away and another held him back. At this point, Ramadan was across the street from him and was still saying insulting things; he was calling Diab's mother a "whore" and saying he was going to take Diab's wife, business, and house. There was a plastic bread tray nearby, the type used for bread deliveries. Diab grabbed that tray and "tossed it . . . away" because he "was so upset." The bread tray hit Ramadan in the hand. Diab and his friend then got into Diab's van and left the restaurant. Approximately 10 minutes after they left the restaurant, Diab's friend received a call that Ramadan was in an accident. They went to the site of the accident and saw the paramedic giving Ramadan CPR. Diab found out later that night Ramadan had passed away. Diab did not know Ramadan had any medical conditions.

Mid Century obtained police reports from the Hermosa Beach Police Department memorializing witness interviews conducted by the police. Three witnesses said that Diab picked up the bread tray and "threw it at Ramadan." The report of the police interview with Diab himself said that Diab "took a plastic bread rack and from a distance of fourteen or fifteen feet he threw the bread rack like a basketball at Ramadan, hitting him in the shoulder." The witnesses all said the bread tray hit Ramadan in the shoulder or head, or both places.

Mid Century sent Diab a letter on May 22, 2010, denying his claim for defense and indemnity. The denial letter said Diab had become so upset with Ramadan that he "grabbed

4

a bread pan and threw it at . . . Ramadan." The letter reasoned that the allegations of assault and battery in the *Nunez* complaint were not accidental behaviors and therefore did not meet the definition of an "occurrence" in the policy. Mid Century concluded coverage was not met and exclusions for coverage also applied.

Diab responded to Mid Century's disclaimer of coverage with his own letter. In it, he told Mid Century that their "primary key fact" was inaccurate in that he did not throw the bread tray at Ramadan. He said he did not throw it at Ramadan or with "an intent of causing it to hi[t]" Ramadan. Instead, he hit Ramadan by accident. He also said he held the wine bottle in self-defense and not to assault Ramadan with it. Moreover, at no time did he engage in any conduct with the intent to cause injury to Ramadan. In short, he said any injury to Ramadan was accidental. He asked Mid Century to reconsider its disclaimer. Mid Century responded by again disclaiming coverage.

On October 27, 2010, Diab and Nunez stipulated to the filing of a first amended complaint (FAC) in the *Nunez* Action. The FAC still included causes of action for assault and battery and wrongful death, but it added a cause of action against Diab for negligence. The allegations of the FAC were substantially the same in all material respects, except that instead of saying Diab threw the bread tray at Ramadan, it said he threw the tray "toward [Ramadan's] direction." Also, the cause of action for negligence stated that Diab "carelessly verbally abused a man whom he knew had a heart condition and negligently threw the crate," and as a result, Ramadan became so upset and fearful that he suffered a massive heart attack and died.

Mid Century received the *Nunez* FAC on May 27, 2011, and Diab requested that Mid Century reconsider its coverage disclaimer on June 3, 2011. Also on June 3, Diab served verified discovery responses on Mid Century in which he stated that he threw the bread tray "in frustration" and without the intent to hit Ramadan. Mid Century again disclaimed coverage on July 26, 2011, reiterating there was no coverage under the insuring clause.

## PROCEDURAL HISTORY

Diab filed this action for declaratory relief regarding the duty to defend and insurance bad faith for refusal to defend on September 28, 2010. By way of an FAC filed on

5

November 3, 2011, he added causes of action for declaratory relief regarding the duty to indemnify and insurance bad faith for failure to settle. On February 6, 2012, Mid Century moved for summary judgment on the ground that there was no potential for coverage under the policy because Diab's conduct in connection with the *Nunez* Action was not accidental. The court agreed and granted Mid Century's summary judgment motion and entered judgment in favor of Mid Century. Diab timely appealed.

## STANDARD OF REVIEW

The trial court properly grants a motion for summary judgment when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and independently determine whether the undisputed facts warrant judgment for the moving party as a matter of law. (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1301.) We view the evidence in the light most favorable to the nonmoving party, liberally construing the nonmoving party's evidence and strictly scrutinizing the moving party's. (*Id.* at p. 1302.)

"The interpretation and application of an insurance policy to undisputed facts presents a question of law subject to this court's independent review." (*State Farm General Ins. Co. v. Frake* (2011) 197 Cal.App.4th 568, 577 (*Frake*).)

## DISCUSSION

Mid Century contends it had no duty to defend Diab in the *Nunez* Action and, moreover, the facts supporting this conclusion were undisputed. Diab contends there was a triable issue of fact regarding whether his conduct was "accidental" within the meaning of the policy, thereby precluding summary judgment. We agree with Diab.

An insurer has a duty to defend if there is a potential for coverage under the policy. (*Frake, supra*, 197 Cal.App.4th at p. 577.) The duty to defend is broader than the duty to indemnify and may exist even when there is some doubt about coverage or coverage ultimately does not develop. (*Ibid.*) The duty applies even to claims that are groundless or fraudulent. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 (*Waller*).) The insured has the burden of proving the potential for coverage in a declaratory relief action on

6

the duty to defend.  (*Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 322; *Frake, supra*, at p. 577.)  When there is no potential for coverage, there is no duty to defend. (*Waller, supra*, at p. 19.)  We resolve any doubt as to whether the facts or allegations establish a duty to defend in the insured's favor.  (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299-300.)

The duty to defend, while broad, is not without limits.  The duty is limited by the nature and kinds of risk covered by the policy.  (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 591.)  The first step in determining whether the insurer owes a duty to defend is to compare the allegations of the complaint with the terms of the policy.  (*Frake, supra*, 197 Cal.App.4th at p. 578.)  Facts extrinsic to the complaint may also be examined and may either give rise to or preclude the duty to defend.  (*Waller, supra*, 11 Cal.4th at p. 19.)

The insuring clause of Diab's policy states that the policy covers bodily injury resulting from an occurrence, and an occurrence is defined as an accident.  Thus, the policy covers bodily injury resulting from an accident.  "Under California law, the word 'accident' in the coverage clause of a liability policy refers to the conduct of the insured for which liability is sought to be imposed on the insured."  (*Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 311 (*Delgado*).)  "An intentional act is not an 'accident' within the plain meaning of the word."  (*Royal Globe Ins. Co. v. Whitaker* (1986) 181 Cal.App.3d 532, 537, fn. omitted.)  "In the context of liability insurance, an accident is '"an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause."'  [Citations.]  'This common law construction of the term "accident" becomes part of the policy and precludes any assertion that the term is ambiguous.'"  (*Delgado, supra*, at p. 308.)

The term "accident" refers to the nature of the conduct itself, not to unintended consequences.  (*Frake, supra*, 197 Cal.App.4th at p. 579.)  An accident "is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage."  (*Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50 (*Merced*).)  When an insured intends *all* of the acts

7

that result in the victim's injury, the injury is not an accident "merely because the insured did not intend to cause injury. [Citations.] The insured's subjective intent is irrelevant." (*Fire Ins. Exchange v. Superior Court* (2010) 181 Cal.App.4th 388, 392 (*Bourguignon*); see *Merced, supra*, at p. 48 ["[A]ppellants contend an accident occurs even if the acts causing the alleged damage were intentional as long as the resulting damage was not intended. The argument urged by appellants has been repeatedly rejected by the appellate courts."].)

Nevertheless, coverage is not *always* precluded when the insured acted intentionally and the victim was injured. (*Frake, supra*, 197 Cal.App.4th at p. 580.) An accident may exist "when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity" -- in other words, when the insured intends *less than all* the acts that result in the victim's injury. (*Merced, supra*, 213 Cal.App.3d at p. 50.) The court in *Merced* provided the following example: "When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury -- hitting the other car -- was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury -- hitting the other car -- would be intentional and any resulting injury would be directly caused by the driver's intentional act." (*Ibid.*)

At the heart of this appeal is whether Diab's conduct constituted an accident within the meaning of the policy. If we were limited to the allegations of the *Nunez* complaint and FAC, there would be little doubt Diab's conduct was intentional and therefore outside the scope of coverage. But Diab presented some extrinsic evidence to Mid Century that Ramadan's bodily injury resulted at least in part from an unintentional act. The autopsy report opined that "the verbal altercation *and* assault with the bread crate" (italics added) produced catecholamines, which increased the irritability of Ramadan's already diseased myocardium, making it more susceptible to the fatal arrhythmia that most likely killed Ramadan. Both of the *Nunez* complaints said "almost immediately after" Ramadan was hit with the bread tray, he grabbed his left arm and began complaining of pain. By all accounts,

8

the blow with the bread tray was one of the causal events leading to Ramadan's demise. Diab's statements in his transcribed interview with Mid Century, the letter responding to Mid Century's disclaimer, and his discovery responses indicate that he threw the bread tray "away" because he was upset or frustrated, and he did not intend to throw it at Ramadan or hit Ramadan with it. In Diab's version of the events, the bread tray hitting Ramadan was an """"unexpected"""" and """"undesigned happening."""" (*Delgado, supra*, 47 Cal.4th at p. 308.) He said he did not intend *all* of the acts that resulted in the injury.

Accordingly, the parties disputed whether this "aspect in the causal series of events" -- the bread tray hitting Ramadan -- was intended by Diab or was a matter of fortuity. (*Merced, supra*, 213 Cal.App.3d at p. 50.) Diab's deliberately throwing the tray was like the driver who was deliberately speeding in the *Merced* example. Although the driver intended to speed, he did not intend to hit another car, and the injury-producing event would thus be accidental. (*Ibid.*) Analogously, although Diab deliberately threw the tray, he said he did not intend to throw it at Ramadan or hit Ramadan. This triable issue of fact regarding Diab's intent and the accidental nature of his conduct means that the potential for coverage still exists. Summary judgment in favor of Mid Century was not appropriate.

The relatively recent *Frake* case on which Mid Century relies may be distinguished. In that case, the insured and his friend were engaging in horseplay, and the insured struck his friend in the groin. The two had apparently engaged in this type of horseplay (striking each other in the groin area) for years. (*Frake, supra*, 197 Cal.App.4th at p. 572.) The insured admitted he intended to strike his friend in the general area of the groin, but he said he did not intend to harm his friend. (*Id.* at p. 578.) The friend suffered numerous injuries from the strike that resulted in over $70,000 in medical bills. (*Id.* at p. 572.) When the friend sued the insured, the insured tendered defense of the action under a insurance policy covering damages for bodily injury caused by an accident. (*Ibid.*) The court held the insurer had no duty to defend and the trial court erred in granting summary adjudication for the insured. It noted this was not a case of "some 'unexpected, independent, and unforeseen happening' in the causal chain" producing the harm, insofar as there was no dispute the insured intended to strike his friend in the groin area. (*Id.* at p. 580.) The court further held

9

that the mere fact the insured did not intend to harm his friend did not transform his intentional conduct into an accident. (*Id.* at pp. 580-581.) The injury-producing event was not accidental. (*Ibid.*)

By contrast, here there was a dispute as to whether one of the injury-producing acts in the causal chain was accidental. Diab has not admitted that he intended to hit Ramadan with the bread tray, as the insured in *Frake* admitted that he intended to hit his friend. Diab also contends he did not intend to harm Ramadan, but we agree with *Frake* that his intent to harm was irrelevant. (*Frake, supra*, 197 Cal.App.4th at p. 585.) Our holding has nothing to do with his intent to harm, or lack thereof. It is Diab's intent to hit Ramadan with the bread tray that is the issue. (See *Bourguignon, supra*, 181 Cal.App.4th at p. 392 [when insured intends all injury-producing events, injury is not an accident merely because insured did not intend to harm].) And given the dispute surrounding this issue, summary judgment should not have been granted.

## DISPOSITION

The judgment is reversed. Appellant to recover costs on appeal.

FLIER, J.

I CONCUR:

RUBIN, J.

10

**BIGELOW, P.J. Dissenting:**

I respectfully dissent.

It is true that an insurer's duty to defend is broader than its duty to indemnify. (*Horace Mann Ins. Co. v. Barbara B*. (1993) 4 Cal.4th 1076, 1081.)  Whether there is a duty to defend is ordinarily assessed by comparing the allegations of the underlying complaint with the terms of the policy.  Facts extrinsic to the complaint may also create a duty to defend when they reveal a possibility that the policy may cover the claim. (*Waller v. Truck Ins. Exchange, Inc*. (1995) 11 Cal.4th 1, 19.)  But, when there is " ' "no possibility of coverage, there is no duty to defend." ' "  (*Ibid.*)

Here, the insurance contract between Mid Century and Diab provides Mid Century will indemnify Diab for damages he becomes legally obligated to pay "because of an accident."  In my view, the undisputed facts in this case establish there was no accident, and, as a result, no possibility of coverage.

In determining whether an event is an accident, it is well established that the insured's subjective intent is irrelevant.  (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 598.)  Accordingly, courts have held that if an insured's act is intentional there is no accident, regardless of whether the policy holder intended the consequences of the act.  (*Collin v. American Empire Ins. Co* (1994) 21 Cal.App.4th 787, 806.)  Similarly, there is no accident where the act *and* the injury were intended. (*Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 311-312 (*Delgado*); *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50 (*Merced*).)

The California Supreme Court recently stated in *Delgado* that "[i]n the context of liability insurance, an accident is ' "an unexpected, unforeseen or undesigned happening or consequence from either a known or an unknown cause." ' "  (*Delgado*, *supra,* at p. 308.)  But *Delgado* "did not alter the well-established definition of the term

'accident,' " so as to change the rule that an accident does not occur when an intentional act results in unintended harm. (*State Farm General Ins. Co. v. Frake* (2011) 197 Cal.App.4th 568, 582-583 (*Frake*).) Thus, "[i]t is well established in California that the term 'accident' refers to the nature of the act giving rise to liability; not to the insured's intent to cause harm." (*Fire Ins. Exchange v. Superior Court* (2010) 181 Cal.App.4th 388, 393.) The relevant case law indicates that to determine whether an event is an accident for insurance coverage purposes, the inquiry focuses on whether the insured engaged in a deliberate, intentional act that produced the injury, not whether the insured intended to cause the harm that occurred. (*Frake, supra,* at p. 579.)

The majority acknowledges that whether Diab intended to cause the heart attack is not relevant. But, it also broadly applies a rule that an accident occurs " 'when *any* aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity.' " (Maj. Opn. at p. 8, citing *Merced,* italics added.) The majority finds there is a possibility of coverage here because while all of Diab's acts were intentional, there is a factual dispute about whether he *intended to hit* Ramadan with a bread tray during the course of his tirade. (Maj. Opn. at p. 10.)

I would not find a material triable issue of fact exists as to whether Diab's conduct was an accident. Even under Diab's characterization of the facts, none of his actions leading up to the heart attack was unintended. After hearing Ramadan's comments about him, Diab deliberately went to Ramadan's location to engage him. He verbally confronted Ramadan. He got out of his vehicle to continue the confrontation. Anticipating that the incident might become physical, he took a wine bottle out of his van and held it behind his back. His friends saw fit to take it away. He described his friends as "holding him back." The only reasonable inference is that his conduct gave them reason to do so. He described being on opposite sides of the street, engaged in a "dog barking fight." Yet, in response to Ramadan's comments denigrating his mother, Diab ran from his side of the street to Ramadan's side, grabbed a tray, and "tossed it" because he was so upset. The tray hit Ramadan in the hand. Thus, even in his own recitation of

2

the facts, Diab's act of throwing the tray was not an accident. It was part and parcel of the heated confrontation with Ramadan. In another document, Diab described throwing the tray like a "basketball pass." However, Diab never claimed the tray slipped out his hands, or he only meant to waive it in the air but not throw it, or he was aiming it away from Ramadan. That Diab may not have intended to hit Ramadan with the tray does not render "accidental" his act of throwing it, out of frustration or anger, in the course of a heated confrontation, in Ramadan's general direction. (*Fire Ins. Exchange v. Superior Court, supra,* 181 Cal.App.4th at p. 392 [" 'Accident' is given a commonsense interpretation that it is an unintentional, unexpected, chance occurrence."].)

Moreover, the alleged injury-causing event in this case was not simply the impact of the tray hitting Ramadan. Instead it was the entire incident, including the verbal confrontation, which caused the surge of catecholamines, associated with fear and flight. Diab's actions which produced this physiological response in Ramadan were all deliberate and intentional. It belies common sense to say there is a *material*, triable issue of fact as to whether Diab acted accidentally during his rage because he may or may not have intended to hit Ramadan when he threw the bread tray.

The majority relies on one illustration first stated in *Merced* to justify its result. There, the court stated that when a driver intentionally speeds but negligently hits another car it can be considered an accident because the act directly responsible for the injury – hitting the car – was not intended by the driver and was fortuitous. However, if a driver deliberately sped and hit another car it would be intentional and the resulting injury would not be considered an accident. Here, an angry individual deliberately set off intending to and succeeding in aggressively confronting his target. Diab's actions were more akin to the driver who speeds and deliberately hits another car. The "act directly responsible for the injury" was Diab's combined course of conduct, including the verbal assault, aggressive confrontation, and throwing of the tray. These acts were intentional, even though the ultimate harm—Ramadan's heart attack—may not have been Diab's intended goal. I find it inaccurate to conclude the "act directly responsible for the injury"

3

was the tray hitting Ramadan, such that a suggestion that Diab did not intend to hit Ramadan when throwing the tray interrupts the chain of intentional acts and creates an accident subject to potential insurance coverage.

Although in *Merced* the court stated an accident exists when any aspect in the causal series of events leading to injury was unintended by the insured and was fortuitous, the court also explained: " 'An accident, however, is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.' [Citation.]" (*Merced, supra,* 213 Cal.App.3d at p. 50; *Delgado*, *supra*, 47 Cal.4th at p. 315.) I do not agree that the tray hitting Ramadan was an additional, unexpected, independent, and unforeseen happening that produced the damage in this case.

I would affirm the trial court's decision to grant summary judgment.

BIGELOW, P. J.

4