Filed 10/26/15  Kompany, LLC v. Amco Ins. Co. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KOMPANY, LLC, | B259035 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC507049) |
| v. | |
| AMCO INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth Allen White, Judge.  Affirmed.

Law Offices of Ronald Richards & Associates, Ronald Richards for Plaintiff and Appellant.

Hines Hampton, Marc S. Hines, Nicole M. Hampton, and Monica D. Dib for Defendant and Respondent.

Plaintiff and appellant Kompany, LLC (Kompany) leased commercial premises to Divine Dining, Inc. (Divine).  The terms of the lease required Divine to obtain insurance and to name Kompany as an additional insured party under the insurance policy.  A dispute between Kompany and Divine eventually arose, and Divine sued Kompany (the Divine Lawsuit).  In response, Kompany claimed Divine's insurer, defendant and respondent AMCO, had a duty to defend Kompany against Divine's Lawsuit because of Kompany's status as an additional insured under the insurance policy.  When AMCO refused, Kompany sued AMCO for breach of the duty to defend.  AMCO moved for summary judgment and the trial court granted the motion, finding that no reasonable primary insured that paid premiums to an insurer would expect that it was funding a defense against itself under the policy.  Kompany appeals, and we consider whether the terms of the policy—including its exclusion of coverage provisions—obligate AMCO to defend Kompany in the Divine Lawsuit.

## BACKGROUND

On December 1, 2005, Kompany and Divine executed a "Standard Industrial/ Commercial Single-Tenant Lease" (the Lease) for the lease of commercial real property located at 650 North La Cienaga Boulevard in Los Angeles (the Premises).  The Lease obligated Divine to pay a monthly base rent plus a percentage of gross revenues of the business it would operate on the Premises.  The Lease terms also required Divine to obtain and keep in force liability insurance naming Kompany as an additional insured against claims for bodily injury, personal injury, and property damage "based upon or arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto."

After making substantial investments to develop its new business and to complete tenant improvements to the Premises, Divine opened three businesses on the Premises: Republic, a fine dining restaurant; M Lounge, a high-end cocktail lounge with music; and

2

Prana Café, a casual sidewalk eatery. The venture was an apparent success from its inception; gross revenues exceeded $5 million during the first year.

In June 2007, Divine challenged Kompany's computation of the additional rent that was due based on a percentage of gross receipts and demanded a refund of the amount it claimed it had overpaid. Kompany refused to provide an accounting and instead declared Divine in default of the Lease. Divine then filed suit against Kompany, stating claims for breach of contract, intentional and negligent interference with existing economic relations, intentional and negligent interference with prospective economic advantage, slander of title, and declaratory relief, all in connection with the lessor-lessee relationship.

The gist of the complaint was that Divine had operated a thriving restaurant business on the Premises in accordance with the terms of the Lease until Kompany breached the Lease by charging unauthorized additional rent. In retaliation for challenging Kompany's calculation of the proper amount of additional rent due, Divine claimed Kompany engaged in a campaign to oust Divine from the Premises by interfering with Divine's business operations and leasehold rights. Specifically, the complaint alleged Kompany wrongfully caused Divine to incur unexpected and unpredictable charges for real estate taxes and insurance; demanded that Divine cease operation of part of its business despite the fact that such operation is a part and parcel of 'use' authorized under the lease; required one of Divine's owners to guarantee the lease agreement in violation of California Civil Code § 2809; declared multiple defaults upon Divine in retaliation for its demand to refund overcharged rents; disparaged title of Divine's leasehold and business, including calling Divine's owner a member of the Armenian mob in the presence of others; refused to execute a form necessary for Republic to operate legally under its conditional use permit despite the fact that similar forms were executed on numerous occasions before Divine's demand for reimbursement; and sought early termination of the lease agreement with full knowledge of the extent of Divine's sizeable improvements to the Property.

3

Roughly a year after the Divine Lawsuit, in 2008, Kompany brought an unlawful detainer action against Divine and obtained a writ of possession. Although Divine appealed the judgment, it vacated the Premises pursuant to the writ. Division One of this District's Court of Appeal reversed the unlawful detainer judgment in February 2010.

In July of that same year, Kompany tendered to AMCO, Divine's insurer, a request that AMCO defend Kompany against the Divine Lawsuit, which remained pending. AMCO informed Kompany that insurance coverage for the claims asserted by Divine was "questionable" under the Policy, but AMCO agreed to defend Kompany under a full reservation of rights to later withdraw its defense.

Divine filed a first amended complaint in February 2011. The amended complaint added causes of action against Kompany based on its eviction of Divine from the Premises, including breach of the covenant of quiet enjoyment, unjust enrichment, and restitution. AMCO reviewed the amended complaint and again concluded that coverage under the Policy was in doubt because the "claims in the lawsuit may not qualify as damages" and certain of the claims may be subject to Policy exclusions. AMCO reiterated that its defense of the Divine Lawsuit was being provided under a full reservation of rights to later deny coverage, withdraw from the defense of the case, and seek reimbursement of defense costs.

The following year, in February 2012, Divine elected to proceed solely on the fourth cause of action in the first amended complaint, for breach of contract, and the ninth cause of action, for restitution.[1] Divine dismissed all of the tort-based causes of action that were included in the first amended complaint. Upon review of the breach of

---

[1]     The restitution claim alleged that in evicting Divine from the Premises pursuant to the unlawful detainer judgment, Kompany "took, held and destroyed certain valuable property belonging to the Plaintiffs. . . . [¶] 125. When a judgment is reversed on appeal, the appellants are entitled to restitution of all things taken from them under the defective judgment." Divine thus sought return of its personal property that Kompany acquired by reason of the wrongful eviction, plus the value of the property which Kompany destroyed, rendering its return impossible.

contract and restitution claims that remained in the operative complaint,[2] AMCO determined that there was no possibility that the Policy covered a continued defense of Kompany against the Divine Lawsuit.  Consequently, by letter dated April 5, 2012, AMCO notified Kompany that it would no longer bear the costs of defending Kompany in the Divine Lawsuit.

After AMCO notified Kompany it would cease funding the defense of the Divine Lawsuit, Kompany sued AMCO (and Kompany's own primary insurer, Scottsdale Insurance Company, which is not a party to this appeal).  Kompany's complaint against AMCO alleged the insurance company breached its duty to defend Kompany, as well as the Policy's implied covenant of good faith and fair dealing.  Kompany also sought declaratory relief.

AMCO moved for summary judgment of Kompany's lawsuit, arguing there was no possibility that Kompany was entitled to coverage under the insurance policy for the remaining claims in the Divine Lawsuit.  At the hearing on AMCO's summary judgment motion, the trial court stated that the case presented a "very, very unusual set of facts.  But when push comes to shove, it appears pretty clear that there is no[] possibility of coverage.  [¶]  If there were coverage, it would lead to a very, very absurd result, namely, that the primary insured which has paid premiums to the insurer would be funding a defense against itself.  [¶]  It is just not at all what an insurance policy contemplates."  Construing the policy language under general contract principles, the court concluded that the Policy did not provide coverage to Kompany as an additional insured for Divine's claims because "[n]o reasonable primary named insured which had paid premiums to an insurer would expect that it was funding a defense against itself.  It is the reasonable expectation of the named insured which paid the premiums—not the expectation of the additional insured—which must be considered under *Delgado v.*

---

[2]      We refer to the first amended complaint subsequent to Divine's dismissal of all but the causes of action alleging breach of contract and restitution as "the operative complaint."

5

*Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 311.)" The trial court accordingly entered judgment for AMCO, from which Kompany now appeals.

## DISCUSSION

### A.      *Standard of review*

A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "'We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy.' [Citations.]" (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390.) In doing so, we examine the facts presented to the trial court and independently determine their effect as a matter of law. (*Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1837.) We must affirm the judgment if it is correct under any legal theory applicable to the case. (*Lucas v. Pollock* (1992) 7 Cal.App.4th 668, 673.) "Although the trial court may grant summary judgment on one basis, this court may affirm the judgment under another[;] . . . it reviews the ruling, not the rationale." (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376.)

### B.      *The duty to defend*

As our Supreme Court recently stated in *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 287 (*Hartford*): "The duty to defend is guided by several well-established principles. An insurer owes a broad duty to defend against claims that create a potential for indemnity under the insurance policy. (*Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 277-278 (*Gray*).) An insurer must defend against a suit even "'where the evidence suggests, but does not conclusively establish, that the loss is not covered.'" (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299 (*Montrose* ).)"

6

"'Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. [Citation.] But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered.' (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654.) This includes all facts, both disputed and undisputed, that the insurer knows or '"becomes aware of"' from any source (*Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 308) 'if not "at the inception of the third party lawsuit," then "at the time of tender"' (*Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1, 8). 'Moreover, that the precise causes of action pled by the third party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.' (*Scottsdale, supra,* 36 Cal.4th at p. 654.) Thus, '[i]f any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage.' (*Id.* at p. 655.) In general, doubt as to whether an insurer owes a duty to defend 'must be resolved in favor of the insured.' (*Ringler* [*Associates Inc. v. Maryland Cas. Co.* (2000)] 80 Cal.App.4th [1165,] 1186.)" (*Hartford, supra,* 59 Cal.App.4th at p. 287.)

Thus, "[w]hile the duty to defend is broad, it is 'not unlimited; it is measured by the nature and kinds of risks covered by the policy.' (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 (*Waller* ).) In an action seeking declaratory relief concerning a duty to defend, 'the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.*'" (*Hartford, supra,* 59 Cal.4th at p. 288.)

We interpret coverage provisions in an insurance policy broadly and we construe any exclusions in the policy narrowly against the insurer. (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648.) The insured bears the burden of establishing that

7

the claim is within the basic scope of coverage, and if coverage is established, it is the insurer's burden to demonstrate that a claim is specifically excluded from coverage by conspicuous, clear, and unmistakable language.  (*Ibid.*)

C.      *The Policy language*

The AMCO "Premier Businessowners Policy" issued to Divine in effect from February 13, 2006, to February 13, 2008 (the Policy), provided that "[a]ny person or organization from whom you lease premises is an additional insured but only with respect to their liability arising out of your use of that part of the premises leased to you," and only so long as the named insured continues to be a tenant of the premises.  The terms "you" and "your" in that provision refer to the named insured, Divine.  Thus, the insuring language states that the Policy extends coverage to Kompany, "but only with respect to [Kompany's] liability arising out of [Divine's] use of" the Premises.

The "Coverage A" section of the Policy, for "Bodily Injury and Property Damage Liability," is not at issue in this lawsuit.  Rather, Kompany maintains that the causes of action it faces in the operative complaint falls under the "personal injury and advertising liability" provisions of the "Coverage B" section of Policy.  That section reads in relevant part as follows:

"B.      **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

"1.      **INSURING AGREEMENT**

"a.      We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages for which there is coverage under this policy.

8

> "HOWEVER we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply."

The Policy defines "personal and advertising injury" to mean, in relevant part, injury that arises from wrongful entry or eviction, invasion of the right of private occupancy, or slander or libel:

> "14.   **'Personal and advertising injury'** means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:
>
> [¶] . . . [¶]
>
> "c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> "d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . ."

In addition to the coverage provisions on which Kompany relies, the Policy also contains provisions and a "California Amendatory Endorsement" that exclude certain liability claims from coverage. These provisions state there is no coverage for personal and advertising injury that arises out of a breach of contract; as we shall show, it is these provisions that are dispositive:

> " 2.   **EXCLUSIONS**
>
> "This insurance, including any duty we have to defend 'suits', does not apply to:
>
> "a.   'Personal and advertising injury'

9

[¶] . . . [¶]

"6)     Arising out of a breach of contract except an implied contract to use another's advertising idea in your advertisement

[¶] . . . [¶]

"D.     **ADDITIONAL LIABILITY EXCLUSION**

"In the LIABILITY COVERAGE FORM, under Section I. COVERAGES, the following exclusion is added to COVERAGES A and B:

"This insurance, including any duty we have to defend 'suits' does not apply to:

"**Breach of Contract**

"'Bodily Injury', 'property damage' or 'personal and advertising injury' that arises out of or is a result of any breach of a written or oral contract, any breach of any other written or oral agreement, or any breach of an express or implied warranty."

D.     *AMCO established that it had no duty to defend Kompany against the operative complaint*

The trial court found the Policy's coverage provisions ambiguous under the peculiar facts in this case. The court sought to resolve that ambiguity by giving effect to the mutual intention of the parties when they entered into the contract. We agree Kompany is not entitled to a defense from AMCO coverage. We, however, reach that result not by resolving the issue of coverage but by concluding the Policy exclusion provisions establish that AMCO has no continuing duty to defend Kompany.

As quoted above, the Policy excludes coverage for personal and advertising injury that arises out of or is a result of a breach of contract. Kompany contends that, notwithstanding the Policy's exclusion of contract claims, the operative complaint is not limited to the breach of contract cause of action, because "[t]he allegations from this cause of action derived from numerous covered counts, which facts were the basis of the

10

alleged breach of lease by Kompany."[3] Relying on *Gray*, Kompany asserts that "AMCO cannot hide behind the labels used or precise words pleaded in the Complaint[;] rather AMCO must look to the potential liability created by the suit." We agree that "labels" are not dispositive. Thus, we analyze two questions: whether Divine may again amend the operative complaint to assert claims of personal and advertising injury, and whether the breach of contract claim that remains could potentially result in Kompany's liability for personal and advertising injury that does not "arise out of" a breach of contract.

In *Gray*, the Supreme Court held that the insurer was obligated to defend its insured against a complaint alleging that the insured "willfully, maliciously, brutally and intentionally assaulted" the plaintiff, even though such intentionally tortious conduct fell outside the scope of coverage. (*Gray, supra,* 65 Cal.2d at p. 267.) The opinion explains that an insurer "cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable. . . . [Thus,] courts do not examine only the pleaded word but the potential liability created by the suit. . . . " (*Id.* at p. 276.) The court reasoned that because the plaintiff "could have amended his complaint to allege merely negligent conduct," the claim was potentially covered under the insurance policy, triggering the insurer's duty to defend. (*Id.* at p. 277.)

---

[3]     We note that Kompany cannot base its claim to coverage on Divine's cause of action for restitution. "There is no freestanding cause of action for 'restitution' in California. (See *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793.) Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.' [Citations.]" (*Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 661.) Due to the nature of the remedy, a demand for restitution, as set forth in the operative complaint, does not give rise to insurance coverage. "It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies. (See *Jaffe v. Cranford Ins. Co.* (1985) 168 Cal.App.3d 930, 934-935; *AIU Ins. Co. v. Superior Court* [ (1990)] 51 Cal.3d [807,] 836; [citations].)" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266.)

11

The court in *CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598 (*CNA*) applied *Gray*'s holding in a different factual context. The insured in *CNA* was sued in federal court for antitrust violations and intentional interference with contractual relationships; the latter claim was dismissed for lack of federal subject matter jurisdiction. Three insurance carriers to whom the insured tendered the defense declined the tender because their policies provided no coverage for a purely federal antitrust action. The appellate court looked to the factual allegations underlying the antitrust cause of action, which included charges that the insured "misappropriated, stole and misused property interests and trade secrets and made misrepresentations to the . . . plaintiffs [in the underlying lawsuit] 'in an effort to further eliminate the competition of plaintiffs.'" The court stated, "[i]t makes no difference that for strategic adversarial reasons this cause of action was labeled 'antitrust'; as established by *Gray* [], *supra,* 65 Cal.2d at pp. 275-277, it is not the form or title of a cause of action that determines the carrier's duty to defend, but the potential liability suggested by the facts alleged or otherwise available to the insurer." (*Id.* at p. 609.) The court concluded: "At the time of tender, despite the federal court's dismissal of the pendent second cause of action, the possibility that the complaint could still be amended had not been precluded. Federal antitrust complaints are frequently amended to include causes of action for defamation, malicious prosecution, trade disparagement, unfair competition or idea misappropriation." (*Id.* at pp. 610-611.)

"Typically, if a duty to defend exists, then it ends when the third party action is over. But the duty to defend 'may be extinguished earlier, if it is shown that no claim can in fact be covered. [Citation.] . . . In order to extinguish the duty to defend earlier than the end of the third party action, the insurer must 'produce in court *undisputed* extrinsic evidence which *conclusively* establishes that there is no potential for coverage.' (*Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963, 977.) 'Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor.

12

[Citations.]' (*Montrose, supra,* 6 Cal.4th at pp. 299-300.)" (*American Intern. Specialty Lines Ins. Co. v. Continental Cas. Ins. Co.* (2006) 142 Cal.App.4th 1342, 1370.)

According to the foregoing cases, upon receipt of an insured's tender of defense, an insurer is obligated to go beyond the label the claimant attaches to the causes of action in the complaint to determine whether the factual allegations could support a claim of liability on additional causes of action for which the policy would potentially provide coverage. If so, the insurer is duty-bound to defend the lawsuit until it learns of undisputed facts which preclude coverage under the insurance policy.

By the time AMCO withdrew its defense of the Divine Lawsuit, Divine's pleadings were no longer "malleable, changeable and amendable" so as to encompass a covered claim based on disparagement; slander of title; or wrongful eviction from, and wrongful entry into, or invasion of the right of private occupancy of the premises. Rather, Divine had already amended its complaint to dismiss all of its tort-based causes of action, leaving only the claim for breach of contract. There was no possibility that Divine would revive the tort claims, because the statute of limitations with respect to such claims had expired before AMCO withdrew its defense of Kompany.[4]

After Divine dismissed all claims except for breach of contract, the operative complaint no longer seeks damages for Kompany's tortious conduct, but relies solely on

---

[4]    Divine's dismissal was nominally without prejudice, but the facts are clear that Divine has no ability to refile tort claims based on the facts alleged and known. The statute of limitation for slander of title is three years (Code Civ. Proc., § 338, subd. (g)), and the limitations period for Divine's tort claims as originally plead is, at most, four years (Code Civ. Proc., § 343). Since coverage under the Policy expired on February 13, 2008, and the limitations period ran, at the latest, four years after the expiration of the Policy period, Divine could neither revive these lapsed claims nor file a new claim under the Policy. (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 [a plaintiff's voluntary dismissal "without prejudice" permits the plaintiff to file "a new action on the same allegations *if* it is done within the period of the appropriate statute of limitations," emphasis added].)

the Lease to establish its right to recover contract damages from Kompany.[5] Kompany insists that it does not matter that Divine is seeking only contract damages based on Kompany's breach of the Lease. According to Kompany, because some of the factual allegations in support of the contract claim—for example, that Kompany disparaged Divine's business—could also support a claim for personal and advertising injury, the breach of contract cause of action is covered under the Policy notwithstanding the exclusion for damages arising out of a breach of contract. We disagree.

The Policy specifically excludes from coverage "'personal and advertising injury' that arises out of or is a result of any breach of a written or oral contact." This exclusion, stated in both the Policy itself and in the California Amendatory Endorsement, is conspicuous and it is clear—it forecloses coverage for any and all of the factual allegations that remain in the operative complaint because those allegations arose out of a breach of the Lease. For example, Kompany asserts that the allegations that it demanded that Divine cease operations on part of the Premises and entered the Premises and announced that the business was not owned by Divine constitute "wrongful entry into or invasion of the right of private occupation. . . . " However, Kompany points to no evidence available to AMCO which would indicate that this conduct occurred prior to the time Divine first questioned Kompany's compliance with the terms of the Lease, which resulted in Kompany's declaration that Divine was in breach of the Lease. Indeed, Divine's complaint alleges the opposite, namely, that Kompany commenced the course of conduct about which Divine complains in direct retaliation for Divine's contention that

---

[5] We also reject Kompany's assertion that the operative complaint gives rise to a reimbursement right under the Policy based on a discrimination claim. Kompany points to the complaint's allegation that Kompany called Divine's owner a member of the Armenian mob, but that provides no reasonable basis to argue that the complaint includes a cause of action based on national original discrimination. There is no allegation that the supposed victim of such discrimination was an employee of Kompany's, or that Kompany denied him a public accommodation. Consequently, Divine's complaint did not trigger the necessary condition precedent for application of the Policy's "Discrimination Limited Defense Expenses Reimbursement" benefit.

14

Kompany's invoicing of excessive rent violated the Lease terms.[6] That is to say, even those actions by Kompany that could fall within the Policy's definition of personal or advertising injury did not occur until after Kompany allegedly breached its contractual obligations by demanding unauthorized additional rent, and they were traceable to or motivated by the breach. This is precisely the factual situation the Policy exclusion anticipates, namely, potential personal or advertising injury that "arise[s] out of or as a result of" a breach of contract. (See *Alterra Excess & Surplus Ins. Co. v. Snyder* (2015) 234 Cal.App.4th 1390, 1406 [even if exclusion language barring coverage for personal and advertising injury arising out of any violation of intellectual property rights is interpreted narrowly against insurer, it clearly applied to foreclose coverage].) Divine cannot at this point establish liability for personal or advertising injury that does not arise out of a breach of contract, and the Policy's exclusion provisions therefore apply.

In sum, we conclude that the trial court properly ruled that AMCO had no duty to defend the operative complaint. When AMCO learned that Divine had dismissed all but the claim for breach of contract, the undisputed facts known to AMCO established that the Divine Lawsuit, if successful, would render Kompany liable to Divine solely for the damages incurred by reason of Kompany's breach of the Lease. Because these potential damages would, by definition, "arise[] out of or [as] a result of" Kompany's breach of "a written . . . contract," they would be subject to a clear and unambiguous exclusion from the Policy's coverage. Consequently, there was no potential coverage for the Divine Lawsuit. Moreover, because there was no potential coverage under the Policy, Kompany's claim for breach of the covenant of good faith and fair dealing fails as well.

---

[6]     According to the first amended complaint, "[i]n June 2007, Plaintiff complained that Defendant was overcharging them for percentage rent. . . . [¶] In retaliation for this legitimate complaint, Defendant began interfering with Plaintiff's successful business operations." The complaint then lists the various ways in which Kompany interfered with the operation of Divine's business on the Premises, including disparaging title to the leasehold and the business, and invading Divine's rights of occupancy under the Lease.

(*Schwartz v. State Farm Fire and Cas. Co.* (2001) 88 Cal.App.4th 1329, 1341; *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151.)

## DISPOSITION

The judgment of the trial court granting summary judgment in favor of AMCO is affirmed.  AMCO is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

MOSK, Acting P.J.

KRIEGLER, J.